# Richmond

## SAMUEL ZACK CECIL v. ELLEN KATE HARMAN CECIL.

March 2, 1942.

Record No. 2477.

Present, All the Justices.

The opinion states the case.

*Roby K. Sutherland*, for the appellant.

*Gilmer, Wysor & Gilmer*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

Appellee, Ellen Kate Harman Cecil, instituted a suit for divorce against appellant, Samuel Zack Cecil, on the ground of desertion. The prayer of the bill is that she be granted a divorce *a mensa et thoro* and that she be awarded temporary and permanent alimony.

Appellant filed his answer, denying that his desertion of

his wife was voluntary, willful and without justification, but, on the contrary, alleged that she, by her own conduct, had created a situation which rendered their continued marital relations impossible.

The case was heard upon bill, answer, depositions of witnesses and exhibits filed with the bill. After due consideration the court granted appellee a divorce *a mensa et thoro,* and further decreed that appellant pay to appellee, as alimony, the sum of $35.00 per month, payments to begin on the first day of January, 1941.

Thereafter, on the 8th day of February, 1941, appellant filed his petition for an abatement of the alimony previously awarded. In the petition it is alleged that the financial condition of appellant has undergone a change, and that appellee is capable of supporting herself.

Issue was joined on the petition and the court, by decree entered, denied the prayer of the petition.

From both decrees appellant has been allowed an appeal.

It is assigned that the court erred in permitting illegal evidence to be introduced and in refusing to permit the introduction of legal evidence.

These assignments are without merit.

The evidence admitted and the evidence rejected, in our opinion, throws no light on the main actions of the court, viz.: the granting of the divorce from bed and board, the allowance of alimony and the refusal of the court, upon the petition of appellant, to abate the alimony awarded.

The appellant and appellee were married on September 2, 1937, in Pulaski, Virginia. At the time of the marriage they were twenty-three and nineteen years of age, respectively. During the first year of their married life they lived at Blacksburg, Virginia, where appellant was a student at the Virginia Polytechnic Institute. Following his graduation, appellant procured employment with the Virginia State Auditing Department, at a salary of one hundred and fifty dollars per month. Due to the fact that appellant's work necessitated his traveling over various sections of the State, he did not attempt to establish a home, and by mutual agreement, appellee went to the home of her parents to reside during the

periodic absences of appellant. No children were born to the union and the couple continued to reside in the Harman home until the separation complained of occurred.

On June 14, 1940, appellant mailed from Rocky Mount, Virginia, the following letter addressed to his father, S. W. Cecil, of Pulaski, Virginia:

"Dear Daddy,

I hope after you have read this letter that you wont be too mad with me. Daddy, you know that I promised you I would try to make things go as well as I could two weeks ago and also last week, but I declare I just can't go on with it any longer. The reason I feel this way, I don't know exactly but I only know that I no longer love Ellen and even more I hate to even be in her presence. I can't help the way I feel and I am sorry for the way I feel because of you and mother and also Ellen Mother and father, but it is true and I just can't go on pretending that I like her when I don't. I think that just pretending is worse than just coming out and being plain frank and telling the truth.

"Daddy, I know this will hurt you and Mother but really I just can't see anything else to do at all, except pretend a lie, or something that down deep in my heart I know isn't true. So please forgive me and please tell Ellen or let her read this letter or something and I mean this when I say I will not be home any more, at least to go up to the Harmans and stay with Ellen. I will come some time to see you and Mother if you want me but Daddy I just can't go on any more as I have for a year or more and I wont. So please don't call me and ask me to come home because I really don't want to come and I am not coming ever to be with Ellen. Don't say anything to Mother for awhile yet because I would like to talk to her just before you tell her.

"Daddy you can write me here in care of Trial Justice, but please, please don't call me and ask me to come home, because of the way I feel I just don't want to be there at all.

"Tell Ellen I will send her a check for twenty-five dollars around the fifteenth of each month as long as we are still

married but I am not coming back to her to live with her again.

"I want to say again that I am sorry for the worry I have caused everyone and sorry that I have turned out differently than you had hoped but something has just changed me and there is nothing that I can do.

"Please be sure to let Ellen know so she wont be expecting me and I will write you along and let you know where I am but I won't be home for some time.

"All my love to you and Mother.

ZACK."

This letter was delivered to appellee by S. W. Cecil and on August 2, 1940, she instituted her suit for divorce on the ground of desertion.

In the answer filed by appellant there was no denial of his intention to sever marital relations, but there were allegations in regard to the conduct of appellee which, he alleged, justified his act of desertion.

The record discloses that the appellant and appellee are persons of excellent background. There is no dispute in regard to the willful desertion of appellee by appellant. Appellant's letter to his father and the parol evidence of witnesses are conclusive on that score. While appellant, testifying as a witness, seeks by innuendo and suggestion to reflect upon the conduct of appellee, there is not a word of evidence which tends to stamp the conduct of appellee as immoral. At most, the evidence adduced for appellant and appellee consists of petty charges and counter-charges which reflect the fact that the marital status had reached an irreconcilable state.

In our opinion, no good purpose will be served by a detailed discussion of the evidence. It is sufficient to state that every charge made by appellant has been specifically denied by appellee and every conflict in the evidence has been resolved in her favor. The learned trial judge, as shown by a memorandum filed, has given careful consideration to all the facts and circumstances appearing in the record. He

had the benefit of seeing these young people during the progress of the litigation and of hearing them testify in regard to the physical condition of appellee and the financial situation of appellant.

█ Had the trial court entered any other decree on the question of divorce than the decree complained of, it would have been reversible error.

The second question to be considered relates to the allowance of alimony.

In support of the allegations of the petition for an abatement of the alimony allowed, appellant testified that he was indebted to his father in a large sum which had been advanced on account of the expense occurred incident to his education. He further testified that since the entry of the alimony decree he had, "without any necessity therefor," enlisted in the Army Air Corps, and that eventually he would receive a salary of approximately $125.00 per month; that at the time of filing his petition, he was not, in the service but was on what is termed an "inactive status." In regard to the ability of appellee to earn her own livelihood, he testified that she was physically and mentally capable of doing so.

In rebuttal, appellee introduced evidence that, due to injuries sustained in an automobile accident, and due to her highly nervous condition, she was unable to perform any physical service; that she was devoid of any business training whatsoever; therefore, she was incapable of engaging in any business pursuit.

██The trial court was warranted in inferring, as we do, that appellant joined the Air Corps to escape payment of the alimony decreed. The present condition of appellee is sufficient justification for the allowance of alimony. This decree is not irrevocable. If, in the future, her physical and mental condition should undergo a change for the better, appellant is afforded ample relief by invoking the provisions of section 5111 of the Code, which provides that the court may, in a proper case upon the petition of a defendant, decrease or cause to cease the payment of alimony.

The action of the trial court is fully supported by the

decisions of this court dealing with the question of alimony.

In *Hulcher* v. *Hulcher*, 177 Va. 12, 12 S. E. (2d) 767, Mr. Justice Spratley said:

"Alimony is founded upon the natural and legal duty of the husband to support his wife. It is not intended as a penalty against him, nor as a reward for her virtues. There being no fixed standard of measurement, it rests in the sound judicial discretion of the court. While the financial condition of the husband is important, it is only one of the essentials in determining the amount. There must also be taken into consideration the needs of the wife, the husband's ability to pay by virtue of his earning capacity, and all other circumstances of the particular case. * * *"

We find no error in the decrees complained of and, therefore, they are affirmed.

*Affirmed.*