# Richmond

HENCIL WRIGHT RING v. FRANCES HUFF RING.

June 10, 1946.

Record No. 3048.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*Woods, Rogers, Muse & Walker, T. W. Messick* and *Earl A. Fitzpatrick,* for the appellant.

*Cocke, Hazelgrove & Shackelford* and *John D. Carr,* for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

On the 6th day of July, 1943, Frances Huff Ring, appellee, instituted suit against her husband, Hencil Wright Ring, appellant.

The bill of complaint alleges that on the 7th day of November, 1930, she (then being eighteen years of age) was lawfully married to appellant in the town of Newland, North Carolina; that they are residents of the city of Roanoke, having resided there from the time of their marriage; and, that four children have been born of the marriage.

The bill of complaint, while charging generally that appellant was addicted to the liquor habit and that on occasions he was cruel and abusive to appellee, specifically charges that on July 4, 1943, appellant registered at a local hotel under the name of A. R. Wright, acquired a room which he occupied from 4:00 o'clock p. m., until 1:30 or 2:00 o'clock a. m.; that during his stay at the hotel he was visited by a woman who occupied the room with him; and that during the period named he was guilty of adultery with the said woman.

The prayer of the bill was that appellee be granted an absolute divorce from her husband, alimony, costs of suit, counsel fees, custody of the children and an adequate sum for their maintenance, support and education.

Appellant filed an answer denying the charge of adultery. In lieu of depositions, the evidence was heard *ore tenus* and, therefore, the case comes to this court with all conflicts in the evidence resolved in favor of the appellee.

Upon final submission, the court entered a decree adjudging that appellant was guilty of the act of adultery, as charged in the bill of complaint, and since appellee had not in any wise condoned said act, she was awarded a divorce *a vinculo*. The decree further provided that appellant pay to appellee "alimony in the sum of and at the rate of $300.00 per month, beginning with July 5, 1943; that appellant further pay unto appellee the sum of $100.00 per month for the support, maintenance and education of each of the three infant children; and that appellant further pay the sum of $20.00 per month for the infant, Nora Lucinda Ring, who is a student in a private school.

In order to secure the payment awarded, the decree further provided:

"And it is further adjudged, ordered and decreed that the awards and judgments to the complainant for alimony and for the support, maintenance and education of the three infant children, Hencil Wright Ring, Jr., Mary Frances Ring and Peter Huff Ring, and for the 'other clothing and incidentals' for the infant, Nora Lucinda Ring, shall all and several constitute, be and remain a specific lien and charge to attach to and be impressed upon 700 shares of the stock in Roanoke City Mills, Incorporated, owned by respondent, Hencil Wright Ring, and he shall forthwith deliver to and deposit with the Clerk of this Court, and the Clerk shall hold and retain subject to the further order of this Court, the stock certificates evidencing and representing the said 700 shares, and the Clerk of this Court shall endorse on each and all of said certificates the following memorandum or notation, to-wit:

" 'The stock evidenced by the within certificate is expressly subject to the lien and charge thereon provided for in the decree of the Court of Law and Chancery for the City of Roanoke, Virginia, entered January 31st, 1945, in the chancery cause of Frances Huff Ring v. Hencil Wright Ring, to which reference is hereby made.'

and the said stock shall not be pledged, encumbered, sold,

assigned, converted or in any manner transferred or disposed of without leave of this Court first obtained and after proper notice to the complainant and/or the legal representative of the said infant children, as their status at the time may require; * * *"

It was further adjudged and decreed that appellant pay to the attorneys of appellee the sum of $1200 for services rendered in the prosecution of the suit.

It is assigned as error that:

"The Court erred in its final decree in its allowance of alimony to Frances Ring and the support of the children, for the reason that the amounts decreed are grossly excessive in view of the net income of Hencil Ring, the estate of Frances Ring and her income derived therefrom, and the reasonable and proper needs of the children."

The petition of appellant for an appeal contains this admission:

"Hencil Ring is a man of considerable means. His net worth is approximately $112,000.00. His principal asset is 793 ¾ shares of stock in the Roanoke City Mills of the approximate value of $95,000.00. His other assets consist of his home in the City of Roanoke, and a summer home at Terrapin Point (Irvington, Virginia), together with certain household furnishings, motor vehicles and miscellaneous personal property.

"For the past several years Hencil Ring has enjoyed a large income. His gross income for the year 1943, was $20,075.00, and an average gross income of $21,302.80 for the years 1937 to 1942 inclusive. He has a net income, after the payment of taxes, to properly and adequately support his former wife and children."

According to the contention of appellee, this is a modest admission, as the proof offered by her shows that the estate of appellant is in excess of $150,000, excluding an income of $20,000 annually.

While it is true, as shown by the record, that appellee is possessed of a sizeable estate, there is no rule of law that

requires her to expend her estate to ameliorate the condition of appellant, brought about by his faithlessness to his marriage vows.

In *Bailey* v. *Bailey*, 21 Gratt. (62 Va.) 43, 58, which was the first divorce case to reach this court, Judge Christian said: "In fixing the amount of alimony in cases like this, the court will not seek to find how light the burden· may possibly be made but what, under all the circumstances, will be a fair and just allotment."

■ ■ No rule of law is better established than that, during the marital status, it is the duty of the husband to provide adequate support and maintenance for his wife and children according to the station in life in which he has placed them, consistent with his financial ability. By a like token, the law imposes upon a derelict husband and father the duty of maintaining his former wife and his children in the same manner to which he· has accustomed them, providing his financial status warrants it.

It is admitted that appellant and appellee lived a life of affluence during their marriage.

■ Our statute ·provides that the award of alimony is within the sound discretion of the court. While the allowance in the instant case is large, it is not excessive when we consider .the· fixed assets· of appellant combined with his princely income.

Section 5111 of the Code provides: " * * * upon decreeing a divorce * * * the court may make such further decree as it shall deem expedient concerning the estate and the maintenance of the parties, or either of them, and the care, custody and maintenance of their minor children * * * ."

In *Twohy* v. *Twohy*, 130 Va. 557, 107 S. E. 642, this court dealt with a question similar to the question now before us. In that case it appears that Florence M. Twohy was granted a divorce *a mensa* from her husband, George Twohy, on the ground of desertion. Taking into consideration the fact that the husband was a man of considerable means apart from his own earning powers, the permanent

alimony of the wife was fixed at $3,600 a year, and a like amount was allowed for the support, maintenance and education of their three infant children. Upon appeal, this court held that the amount allowed was not excessive.

The rule applicable to the allowance of alimony is concisely stated in *Lovegrove* v. *Lovegrove*, 128 Va. 449, 104 S. E. 804, as follows:

"Then there is another general rule universally accepted, to the effect that the trial court has a very broad discretion in fixing the amount of alimony, and that the appellate court will not interfere with such discretion unless it is clear that some injustice has been done." (Citing cases).

Upon this phase of the case we are of opinion that the assignment of error is without merit.

It is further assigned as error that the trial court erred in its final decree in impounding the stock of appellant in the Roanoke City Mills as security for the payment of the alimony and the support of the infant children.

The question presented is one of first impression in this court.

"At common law, a divorce *a vinculo* could only be granted by the court for a cause existing at the time of the marriage * * * * and divorces for supervening causes could only be granted by act of parliament, which then became the law of the case." *Gum* v. *Gum*, 122 Va. 32, 38, 94 S. E. 177.

In Virginia, by statute, a divorce may be granted *a vinculo* for a prior or a supervening cause.

Section 5103 of the Code provides that a divorce may be granted "for natural or incurable impotency of body existing at the time of entering into the marital contract," or "when prior to the marriage, either party without the knowledge of the other, had been convicted of an infamous offense," or when, prior to the marriage, the wife, without the knowledge of the husband, was with child by some person other than the husband, or was, prior to marriage, a prostitute. Subsequent to the marriage, a divorce *a vinculo*

may be granted for adultery, confinement in the penitentiary, desertion for a period of two years, or where either party has been indicted for an offense punishable with death or confinement in the penitentiary, or is a fugitive from justice and has been absent for two years. In the event a divorce is granted, section 5111, *supra*, becomes effective.

In addition to the broad powers conferred upon the court by section 5111, section 6470 of the Code provides:

"Every judgment for money rendered in this State, by any State or federal court, other than by confession in vacation, shall be a lien on all the real estate of or to which the defendant in such judgment is or becomes possessed or entitled, at or after the date of such judgment * * * ."

It is beyond dispute that this section of the Code provides for a lien upon the real estate of the offending husband.

In *Isaacs* v. *Isaacs*, 117 Va. 730, 732, 86 S. E. 105, L. R. A. 1916B, 648, this court construed section 3567 of the Code of 1904 (now section 6470 as amended), and specifically held that a decree for alimony and suit money constitutes a lien on the real estate of the husband.

It is significant that, though the statute provides for a lien upon the real estate, there is no suggestion that such a lien attaches to the personal property of the husband. This omission in the statute is fatal to the contention of appellee that a court of equity has the inherent power to impound the personal property of the appellant to secure the payment of alimony and support money.

In *Almond* v. *Almond*, 4 Rand. (25 Va.) 662, 668, 15 Am. Dec. 781, it is said:

"Now, the claim of the wife for alimony is a personal claim on the husband; she has no lien on any specific property without agreement."

In *Lovegrove* v. *Lovegrove*, 128 Va. 449, 104 S. E. 804, Judge Prentis said:

"The general rule is that a wife is not entitled to have any specific parcel of real estate assigned as her own. Alimony is

usually an allowance in money out of the husband's estate, but not the estate itself. Although the decisions are not harmonious, the very great weight of authority is to the effect that unless there is express statutory authority therefor, the court possesses no power to vest in the wife title to a specific portion of the husband's real estate as alimony."

In *Bray* v. *Landergren*, 161 Va. 699, 703, 172 S. E. 252, Mr. Justice Holt said:

"When it is said that the income is the fund from which alimony should be paid, nothing more is meant than that the decree is personal and should not undertake to set apart specific property for its satisfaction. It is a lien upon the husband's real estate for sums due and to be due and may be enforced as other liens are enforced. *Isaacs* v. *Isaacs*, 117 Va. 730, 86 S. E. 105, L. R. A. 1916B, 648."

In our opinion it is beyond dispute that the jurisdiction of a court of equity in divorce causes does not inherently extend to the disposal of the husband's property, either real or personal.

In *Barnes* v. *American Fertilizer Co.*, 144 Va. 692, 130 S. E. 902, Mr. Justice Chinn said:

"The jurisdiction of divorce causes is purely statutory (2 Bish. Mar. Div. & Sep., sec. 1231), and the court possesses no powers in such cases involving matters of property beyond those conferred by statute, with the exception of awarding alimony, which is an incident of divorce and based upon the doctrine of the husband's duty to maintain and support his wife."

This doctrine was re-affirmed in an opinion by Mr. Justice Spratley in *Golderos* v. *Golderos*, 169 Va. 496, 502, 194 S. E. 706.

Since this court has held that a court of equity has no power to transfer to the wife title to a specific portion of the husband's real estate, by the same token we must hold that the trial court, because of its lack of equity jurisdiction, had no power to impound the stock of appellant.

We have no apprehension that this conclusion will result

in any injury to the appellee or to the offspring of appellant. We rely upon the known power of the court to punish by contempt proceedings any infraction of its decree. In addition to the power of the court to punish by contempt, the court is further empowered by section 5111a of the Code to enforce its decree by requiring of appellant a recognizance to abide by its decree, and upon his failure or refusal so to do, he is subject to commitment to a workhouse or to the State convict road force for a period of twelve months.

However, in view of our conclusion that this action of the court constitutes reversible error, it follows that the security for the payment directed by the decree has been greatly diminished.

The evidence in this record abundantly supports the following statement made by the trial court:

"To say that the respondent endeavors to hide his assets and to cover up his income so as to prevent the Court from getting a true picture of his material status is of itself a masterpiece of understatement. His testimony and exhibits as to assets, income and liabilities bore the hue of fraud and deception. It would serve no useful purpose to categorically detail the numerous and glaring instances of self-contradictions, recalcitrance and attempted deception so patently disclosed by cross-examination."

In our opinion this is a proper case for the application of section 5111a should appellee move the court to require appellant to enter into a recognizance with surety for the performance of the decrees of the court.

The decree of the court impounding the stock of appellant will be reversed and annulled.

Appellee assigns as cross-error the action of the court in failing to decree an adequate sum as counsel fees.

In a memorandum filed by the trial court, this is said:

"The court does not undertake to appraise the value of the services of counsel for the complainant. In view of the nature of the cause, the circumstances and standing of the

parties, the efforts expended and time consumed, it will be decreed that the respondent pay to counsel of record for the complainant the sum of $1,200.00, as the allowance to such counsel for bringing and conducting this suit."

In our opinion there has been no abuse of judicial discretion in the allowance of attorneys' fees. However, on the petition of appellee, an additional fee will be allowed by this court, in the sum of $500, on account of the services rendered by counsel in the preparation of a comprehensive brief and the argument upon appeal, and the cause is hereby remanded for further proceeding if the court be so advised.

The decree of the trial court will be affirmed in part and reversed in part.

*Affirmed in part; reversed in part.*