# Richmond

## GEORGE G. HAWKINS v. DOROTHY W. HAWKINS.

April 26, 1948.

Record No. 3298.

Present, Gregory, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Charles W. Crowder*, for the appellant.

*George E. Haw*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The complaint on this appeal is that the trial court abused its discretion in granting any alimony to the complainant in a divorce suit, and in the amount granted.

The suit was brought by Mrs. Hawkins against her husband in 1944 for a divorce *a mensa* on the grounds of cruelty and desertion, for alimony for herself and support for their two children, and for attorney's fees.

The parties were married in 1925 and have two children—a son and a daughter, who were 16 and 13 years of age respectively when the suit was brought.

A decree was entered November 23, 1944, requiring the defendant to pay to complainant $23 a week for the support of the children, and in addition to furnish necessary wearing apparel for them.

The defendant filed an answer in January, 1945, admitting the formal allegations of the bill and asking for proof of the other material allegations. Nothing further was done until the complainant filed an amended bill in August, 1946, asking for an absolute divorce on the ground that the

desertion, of which she had complained, had continued for more than two years.

The evidence consisted of the depositions of the complainant and her father and of the defendant. The complainant's evidence, which the defendant did not deny, established that for a number of years prior to the bringing of the suit the defendant had been drinking to excess, had frequently cursed and abused the complainant, had assaulted and choked her on more than one occasion; that he had threatened her and she was afraid of him and was forced to have him put under a peace bond. After that trial he deserted her on July 14, 1944, and they have not lived together since.

By decree of February 17, 1947, the chancellor granted to the complainant a divorce from the bonds of matrimony and ordered that, until further order of the court, the defendant pay to the complainant $50 a month as alimony and $60 a month for the support of the daughter, as well as a fee of $125 to complainant's counsel. This decree was set aside ten days later, on defendant's motion, but re-entered on April 2, 1947, without change, except to provide that the monthly payments should begin on March 1, 1947. The only part of this decree objected to is the provision for alimony of $50 a month to the complainant.

The guiding rule was stated in the first divorce case ever to reach this court and it has not been changed since. That was the case of *Bailey* v. *Bailey*, 21 Gratt. (62 Va.) 43, decided in 1871, in which it was said:

"In regard to allotment for alimony, there is no fixed rule. It is a matter within the discretion of the court. Yet, it is not an arbitrary but a judicial discretion, to be exercised in reference to established principles of law relating to the subject, and upon an equitable view of all the circumstances of the particular case."

It is like a breath of fresh air to find in that opinion that "in these modern days of so-called social progress and social reform, it is a fact worthy of record, and one which fitly illustrates the purity of social life, and the

inviolable sanctity of the marriage bond in this State, that there can be found but two reported cases, in all its judicial history from the foundation of the Commonwealth down to the present time, touching questions arising out of the separation of husband and wife. And the two cases referred to were not suits for divorce, but for alimony, brought by the wife after desertion by the husband."

The court regretted that that record, which spoke "volumes in favor of the morality, purity and chastity of that social life, which recognizes marriage as the very basis of the whole fabric of civilized society, and seeks to preserve its sanctity inviolable," was now broken; and concluded with the hope that such cases might be as infrequent in the future as in the past, and that amid the "whelming tide of social and political revolutions * * * one pillar at least of the social fabric may still stand firm, and * * * that marriage may in the future, as it has been in the past, be ever recognized in Virginia as an institution to be cherished by law and sanctified by religion, as one upon which alone the happiness and purity of social and domestic life must ever depend."

But hope sometimes "tells a flattering tale, delusive, vain and hollow." Had the author of that opinion lived until today he would see court dockets everywhere crowded with divorce cases and would be disillusioned and alarmed to know how lightly the sacred bond of matrimony is now broken, and how frequently its duties and obligations are disregarded.

The complaint about the allowance for alimony here is to the effect that the evidence shows that Mrs. Hawkins is self-supporting and the means of the defendant do not warrant the requirement that he pay her $50 a month.

At the time she testified in September, 1946, the complainant was and had been, since a few months after the defendant deserted her, employed by the State Health Department at a net salary of $112 a month. The son had graduated from high school and was in the Navy, and she received $37 a month from the government from

his earnings, of which she put at least $22 a month in bank for him (it is not clear from her testimony whether this sum was $22 or the whole $37). He wants to study pharmacy when he is out of the Navy. It was stated in argument that he is now out of the Navy, and if so, those payments have ceased. The defendant is not relieved of his obligation merely because this son was temporarily able to make some provision for the support of his mother. *Hulcher* v. *Hulcher*, 177 Va. 12, 12 S. E. (2d) 767. But looking at the matter at the time the decree was entered, her maximum income, aside from the payments required of defendant, was $127 a month ($112 from her own earnings and $15 a month from the son). Her daughter was then 16 years old, was in high school and expects to graduate this year. The complainant desires to maintain a home for these children and they are entitled to that.

She bought a home in 1944 for $4,250 and is required to pay thereon $16.50 a month, plus taxes, at which rate she will own it in 15 years. During their married life they bought and sold two houses. The first one cost $2,000, of which she put up $350. It was sold for $2,500 and this was used in the purchase of the second house, which cost $3,750, and was sold for $5,000. It had been conveyed to them °jointly, and after the separation they divided the money, each receiving a net amount of $2,375. She testified, and he did not deny, that he also took with him a five hundred dollar bond that belonged to her, along with $1,100 in bonds that were bought for them jointly, together with his automobile. She kept furniture which cost $600 twenty years ago and a bedroom suite that cost $300 six years ago.

Mr. Hawkins is a plumber employed by a Richmond concern at wages of $1.75 an hour for a five-day week of 40 hours, or $70 a week. If he worked five days each week, that would amount to about $300 a month, which is the amount she testified he could earn if he worked. He introduced a statement from his employer showing his net earnings from January 1, 1946, through September 30,

1946, were $1,733.52, or an average of $192.61 a month. It is argued that if he is required to pay his wife $50 a month in addition to the $60 for his daughter, he would have left only $82.61 a month for his own use.

But that statement does not give the full picture. Part of that time he received only $1.50 an hour. It was raised to $1.75 an hour in July, 1946. At $1.75 an hour those earnings would reflect employment for less than three-fourths of his time. He testified that he was troubled with colds and that during the period covered by the statement he worked for his employers at all times they had working materials. He did not testify as to the time he lost from those causes. It is common knowledge that building materials are in better supply and that a willing worker in the defendant's occupation can find steady employment without difficulty. Assuming that he works only four 8-hour days a week at $1.75 an hour, his gross earnings would be $242 a month. Deductions for income tax and social security in his statement were at the rate of 11%, which would leave him a net income of $216 a month. Deducting the $110 a month required to be paid to the complainant would leave him $106 a month, or nearly half of his net earnings. In many circles that would not be considered an unfavorable ratio.

In determining the propriety of allowing alimony and in fixing its amount, there must be taken into consideration, along with all of the other circumstances of the particular case, the needs of the wife and the ability of the husband to pay—not necessarily the amount of his actual earnings, but his ability to earn. *Hulcher* v. *Hulcher, supra; Bailey* v. *Bailey, supra; Cecil* v. *Cecil,* 179 Va. 274, 19 S. E. (2d) 64.

"No rule of law is better established than that, during the marital status, it is the duty of the husband to provide adequate support and maintenance for his wife and children according to the station in life in which he has placed them, consistent with his financial ability. By a like token, the law imposes upon a derelict husband and

father the duty of maintaining his former wife and his children in the same manner to which he has accustomed them, providing his financial status warrants it." *Ring* v. *Ring*, 185 Va. 269, 274, 38 S. E. (2d) 471, 165 A. L. R. 1237.

■ It does not appear that $110 is an excessive amount under the circumstances for the defendant to pay toward assisting the complainant in the task of supporting and educating their daughter, and maintaining a home for herself and the two children.

■ Where the delinquency of the husband has been established and the wife has been compelled to seek a divorce on account of his misconduct, while alimony is not to be used as a method of punishment, "the court will not seek to find how light the burden may possibly be made, but what, under all the circumstances, will be a fair and just allotment." *Bailey* v. *Bailey, supra,* at p. 58. *Ring* v. *Ring, supra.*

The question of the allowance of alimony and the amount to be allowed are initially a matter of a fair and sound judgment as to what is right and equitable under all of the circumstances of the case. The case comes to us to be considered in the light of "another general rule universally accepted, to the effect that the trial court has a very broad discretion in fixing the amount of alimony, and that the appellate court will not interfere with such discretion unless it is clear that some injustice has been done." *Lovegrove* v. *Lovegrove*, 128 Va. 449, 452, 104 S. E. 804.

If conditions in the future change so as to make the amount inequitable, either party may apply to the court below for relief. Code, section 5111. *Eaton* v. *Davis*, 176 Va. 330, 10 S. E. (2d) 893.

We do not think it has been shown that the chancellor abused his discretion in this case, and the decree complained of is

*Affirmed.*