HARBOUR *v.* HARBOUR.

5-1845                                    324 S. W. 2d 115

Opinion delivered May 18, 1959.

*Charles S. Goldberger* and *E. W. Brockman, Jr.,* for appellant.

*J. S. Brooks* and *M. P. Matheney,* for appellee.

PAUL WARD, Associate Justice. This is an appeal by the husband from an order of the Chancery Court fixing alimony and impounding funds in the Registry of the Court to secure payment thereof. Some phases of this case have been before us three times previously under the same case style. See opinions dated June 9, 1958 (313 S. W. 2d 830), February 2, 1959, and March 23, 1959. Therefore, we deem it unnecessary to set out fully the background facts.

On July 10, 1958, appellant, the former husband, filed a petition asking the court to reduce the monthly alimony and maintenance payments because he was unemployed and because their son was no longer living with his former wife. On the 3rd of September following, appellee, the former wife, petitioned the court to impound approximately $1,700, belonging to appellant and held in court, to insure future payments.

After hearing testimony by both sides, the trial court on October 8, 1958, reduced the monthly alimony payments from $100 to $75, and ordered the money held in court to secure the said payments.

On appeal appellant urges two principal grounds for a reversal, *viz*: (a) The payments are excessive, and (b) the court erred in impounding the money.

(a) We are unable to say the trial court abused its discretion in fixing the alimony payments at $75 per month. The applicable rule is stated in *Foster* v. *Foster,* 216 Ark. 76; 224 S. W. 2d 47:

"This court has many times announced the rule that in fixing the amount of alimony to be awarded, a wide discretion rests with the trial court, and unless there appears to be a clear abuse in the exercise of this discretion, it will not be disturbed by this Court . . ."

Incidentally, this Court, in the cited case, approved $100 monthly payments where the husband's monthly income was $315.02 after deductions. Here appellant, who is a skilled pipe fitter makes over $3.00 per hour and admits that he has been making an average of $3,500 a year. It is true that appellant had not been working for about three months before this particular litigation began, but he admits having some money in the bank to live on until he finds work, and, of course, he has the $1,700 in question. There is ample testimony to show that appellee needs the amount allotted to her. She testified that her itemized expenses amounted to $167.12 per month besides taxes and doctor bills. It also appears from the record that she has living with her a retarded son (also son of appellant) who works some but makes very little, and she states that she intends to give him a home regardless of the outcome of this suit. Appellee works six nights a week at a drive-in restaurant to supplement the alimony. Appellant has extensive bills to pay for medical and hospital expenses because of an auto collision resulting in injuries to his new wife, but he has some hospital insurance, and the prospect of receiving damages for the injuries. Under these circumstances we are

unwilling to substitute our judgment for that of the trial court in fixing the amount of alimony.

(b) It is appellant's position that (1) the trial court had no authority to impound the money, and (2) that, if he did have the authority, he was not justified in doing so under the facts of this case.

(1) On the first point appellant cannot be sustained. Ark. Stats. dealing with divorce and alimony, Sec. 34-1212, in all material parts reads:

"Courts of Equity may enforce the performance of . . . decrees or orders for alimony and maintenance by sequestration of the defendant's property . . ." etc. The above statute was considered in *Rowell* v. *Rowell,* 184 Ark. 643, 43 S. W. 2d 243 (C. & M. Digest 3509), and *Casteel* v. *Casteel,* 38 Ark. 477 (Gantt's Digest 2205), and in each instance it was indicated clearly that the court had the authority to sequestrate or impound the husband's property to secure alimony payments. Other jurisdictions have held a trial court has this inherent right, even where there is no statutory authority. See: *Ring* v. *Ring,* 185 Va. 269, 38 S. W. 2d 471; *Jensen* v. *Jensen,* 144 Neb. 857, 15 N. W. 2d 57, and *Maloney* v. *Maloney,* 12 N. J. Misc. 397, 174 A. 28. See also Keezer on Marriage and Divorce, Sec. 702, citing cases.

(2) Again, we are unwilling to say the trial court erred in impounding appellant's money held in the Court Registry. In the *Rowell* case, *supra,* the court indicated that there must be "some sound reason for the order of sequestration."

In this case we think the record justified the action of the trial court. At times when the appellant was employed he never made any payments until forced by the court to do so. His attitude seems to be expressed by his own testimony when he said that he figured his own interest first, the interest of his new wife second, and the interest of his former wife (appellee) last. The record shows that appellee has had to pay out legal fees in order to try to collect from appellant, and she has not been reimbursed by the defendant, nor has any allow-

ance been made by the court. The trial Judge has had the parties before him several times and is able to better judge the attitude of the appellant and the need for insuring the payment of the monthly allotments than we are, and we are therefore unwilling to substitute our judgment for his.

Affirmed.

JOHNSON, J., dissents.