Susan WARREN *v.* James Timothy WARREN

81-58                                    623 S.W. 2d 813

Supreme Court of Arkansas
Opinion delivered September 28, 1981
Supplemental Opinion on denial of rehearing
delivered December 7, 1981

*Patten, Brown & Leslie*, by: *Charles R. White*, for appellant and cross-appellee.

*William F. Smith* of *Mobley & Smith*, for appellee and cross-appellant.

ROBERT H. DUDLEY, Justice. On Spetember 28, 1979, James Warren filed suit for a divorce against Susan Warren. The trial court granted Susan Warren a divorce on her counter claim, divided the property, awarded custody of the child, ordered child support and impounded funds belonging to James Warren. All of the decree is appealed except the

granting of the divorce and the awarding of the custody of the child.

The Warrens purchased part of their property and filed their suit after the effective date of Act 705 of 1979, commonly referred to as the marital property act. Ark. Stat. Ann. § 34-1214 (Supp. 1979). The trial court ruled that property held in a tenancy by the entirety was not affected by the 1979 marital property division act.

We have traditionally recognized two categories of property in divorce cases. One category has been divided pursuant to the general property division statute which has been codified as Ark. Stat. Ann. § 34-1214 in the 1947 publication, the 1962 replacement and the various supplements prior to 1979. The other category, property held in tenancies by the entireties, has never been divided pursuant to the general property division statute.

Our rule of law on this second category, or entirety property, was well stated in *Jenkins* v. *Jenkins*, 219 Ark. 219, 242 S.W. 2d 124 (1951).

> We have repeatedly held that a decree of divorce cannot dissolve an entirety case. See *Roulston* v. *Hall*, 66 Ark. 305, 50 S.W. 690; *Heinrich* v. *Heinrich*, 177 Ark. 250, 6 S.W. 2d 21; *Ward* v. *Ward*, 186 Ark. 196, 53 S.W. 2d 8; and *Davies* v. *Johnson*, 124 Ark. 390, 187 S.W. 343. In *Heinrich* v. *Heinrich*, supra, we said: "An estate by entirety, either legal or equitable, cannot be divested out of the husband and invested in the wife, or *vice versa*, by the courts. The right to the whole estate by the survivor prevents this. *Roulston* v. *Hall*, 66 Ark. 305, 50 S.W. 690, 74 Am. St. Rep. 97."

> The majority of jurisdictions hold that divorce dissolves the entirety estate; but our holding to the opposite conclusion has become a rule of property in this State.

See also, *Tenancy by the Entirety — Divorce — A Peculiar Rule of Property in Arkansas*, 22 Ark. L. Rev. 386 (1968).

By Act 340 of 1947, Ark. Stat. Ann. § 34-1215 (Repl. 1962), the General Assembly gave courts the authority to convert marital survivorship estates to a tenancy in common. That explicit and concise act stated:

> Courts of Equity, designated Chancery Courts within the State of Arkansas shall have the power to dissolve estates by the entirety or survivorship, in real or personal property, upon the rendition of a final decree of divorcement, and in the division and partition of said property, so held by said parties, shall treat the parties as tenants in common.

This statute is the only authority for dividing estates by the entirety, and it provides for the equal division of property without regard to gender or fault. Minor amendments have since been made but they have no bearing on the issues of this case. See § 34-1215 (Supp. 1981).

From 1891 until the effective date of Act 705 of 1979, all property in the general property category was divided according to the general property division statute, § 34-1214. The first clause in that general statute provided for a limited restoration to each spouse of his or her property not disposed of at the commencement of the action. For a detailed discussion of this provision and a citation of applicable cases see *Domestic Relations — Restoration of Property — Obtained In Consideration or by Reason of Marriage Upon Divorce*, 7 Ark. L. Rev. 64 (1952). The statute next provided that when the wife was granted the divorce because she was the "injured party" as described by § 34-1203 (Repl. 1962), she was entitled to one-third of the husband's personal property absolutely and one-third of his real property for life. We have referred to the clause in the statute as "awarding the injured wife her dower." *Alston* v. *Bitely*, 252 Ark. 79, 477 S.W. 2d 446 (1972). If the divorce was granted to the husband because of the fault of the wife, the statute was construed to mean that she was not entitled to any dower whatsoever. *Kendall* v. *Crenshaw*, 116 Ark. 427, 173 S.W. 2d 393 (1915). The statute made no provision whatever for the husband to share in the wife's property. This statute, § 34-1214 (Repl. 1962), required that property be divided on

the bases of gender and fault while property divided according to the entirety statute, § 34-1215, was always divided equally.

The reasons for the amendment of § 34-1214 (Repl. 1962) by Act 705 of 1979 are obvious. Public caveats on the infirmities of the old statute were given. See *Family Law — Divorce — Constitutionality of Arkansas Property Settlement and Alimony Statutes*, 2 UALR Law Journal 123 (1979). The fact recites that those warnings were heard:

> SECTION 7. It is hereby found and determined by the General Assembly that in a dissenting opinion to the recent case of *McNew* v. *McNew*, 262 Ark. 573 (1977), regarding Ark. Stat. Ann. § 34-1214, a justice of the Arkansas Supreme Court said that "The Arkansas law regarding property was enacted before the turn of the century and can no longer be defended historically or legally with any confidence," and that "It clearly violates the Equal Protection Clauses of the Arkansas and the United States Constitutions"; that in the majority opinion in that same case the Court did not decide this issue, stating "We will not decide constitutional issues unless their determination is essential to disposition of the case," and holding that this issue of property division at the time of a divorce action was not properly before it; that a decision holding that Ark. Stat. Ann. § 34-1214 is unconstitutional would create chaos in all divorce actions then pending in Arkansas courts until such time as the Arkansas General Assembly could enact legislation to cover this subject; and that this Act is designed to correct and clarify the law on this subject. ***

Appellant contends that even though the reasons and the intent for amending the general property division statute, § 34-1214, are crystal clear, the act also abolished the separate statute dealing with entirety property. We disagree. Section 1 of the 1979 act, as well as Section 7 quoted above, state that the general property division statute, § 34-1214, is the statute amended.

SECTION 1. Section 416 of the Arkansas Civil Code, as amended, the same being Arkansas Statutes Section 34-1214, is hereby amended to read as follows:

In 1979 it was necessary for the General Assembly to take some immediate action to cure the defects in § 34-1214. Consequently, Act 705 was made applicable to all cases filed after its effective date and it necessarily affected property purchased before, as well as after, that effective date. By excluding that separate category of property, estates by the entireties, the General Assembly wisely avoided a legal quagmire, for in *Jenkins* v. *Jenkins*, 219 Ark. 219, 242 S.W. 2d 124 (1951), we had held that an estate by the entirety in real estate created a vested property interest which could not be modified by a statute which became effective after the date of purchase.

Act 705 nowhere refers to property acquired as tenants by the entirety; it only refers to "all property acquired by either spouse." Section (1) (B). The conspicuous reason for not amending § 34-1215, the entirety statute, is that it did not need amending. It has no constitutional infirmities.

There is also an apparent consideration of public policy by the General Assembly, and that is the recognition that there ought to be reckonability in the law. When a husband and wife cause a marital survivorship instrument to be created they ought to know that if they remain married the survivor will own the property, and they ought to know that if they divorce the property will be divided equally, and they ought to know that they will not be subjected to the eight variables of the 1979 act. The variables which may be taken into consideration by the court in dividing general marital property are:

(1) the length of the marriage; (2) age, health and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation or

appreciation of marital property, including services as a homemaker.

We hold that Act 705 of 1979, § 34-1214 (Supp. 1979), is not applicable to property owned as tenants by the entirety.

In this case the home and apartment building were owned by the parties as tenants by the entirety. Susan Warren contended that James Warren fraudulently caused her to include him on the warranty deeds. Clearly, the entirety dissolution statute, § 34-1215 (Supp. 1981), has no application where one of the parties fraudulently causes his or her name to be added to the deed. *Johnson* v.*Johnson*, 237 Ark. 311, 372 S.W. 2d 598 (1963). The Chancellor found that she had not been defrauded. Admittedly, it was a difficult factual decision. The testimony of Susan Warren is nebulous. She did not know who prepared the deeds, admitted that it was her idea to purchase the properties, and at one time admitted and at another time denied that she discussed the purchases with her mother and with the family attorney. She offered no testimony about a fraudulent act by Jimmy Warren and testified there was no discussion concerning title. The only reasons given to set aside the tenancy by the entirety are that he left only two days after she put the property in both names and he contributed nothing to the down payment. They both still owe on the balance. The Chancellor found no fraud. Findings of fact by a trial court will not be set aside unless they are clearly against the preponderance of the evidence. Rule 52, Arkansas Rules of Civil Procedure, Vol. 3A (Repl. 1979). We cannot say that the findings of fact by the trial judge are clearly against the preponderance of the evidence and we affirm on this issue.

The certificate of title to the 1971 Corvette automobile was in the names of "James T. or Susan Warren." Since *Union and Mercantile Trust Co.* v. *Hudson*, 147 Ark. 7, 227 S.W. 1 (1921), tenancies by the entireties in personal property have been upheld. However, in this case title was taken in alternative names so that one could transfer title to the divestment of the other. This does not qualify as a tenancy by the entirety. See *Franks* v. *Wood*, 217 Ark. 10, 228 S.W. 2d 480 (1950). However, it does create a " . . .

survivorship in real or personalty . . ." as set forth in the entirety division statute, § 34-1215. We affirm the action of the trial court in treating this automobile pursuant to the entirety division statute.

The trial court correctly applied the marital property statute, § 34-1214 (Supp. 1979), to the rest of the personal property. We cannot say that dividing equally the proceeds derived from the sale of this property is against the preponderance of the evidence.

At the time of the trial James Warren was earning take-home pay of $250 per week. During the marriage Susan Warren gave him substantial sums of money and gave him the entirety interest in the home and apartment building. She is now a college student with the responsibility of raising a small child. Under these circumstances we modify the amount of child support from $37.50 to $50 per week.

The trial court ordered that all the proceeds from the sale of James Warren's interest in the property be impounded in order to insure future child support payments. There was no pleading asking impoundment, no notice and no proof on the matter. There is no judgment for arrearages and this does not qualify as a bond. We find no authority for the impoundment of funds under these conditions and reverse this holding on cross-appeal. The manner of distributing the proceeds as set out in the decree is otherwise affirmed.

Affirmed as modified on appeal. Reversed on cross-appeal.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent from the majority in this case for reasons to be set out below.

The problem presented to the court is whether Act 705 of 1979 as amended is applicable to the present facts. We are particularly concerned with that part of the code designated

as Ark. Stat, Ann. § 34-1214 (Supp. 1981). Section (A) of the Act provides that all marital property shall be distributed one-half to each party unless the court finds such division to be inequitable. The criteria for distribution of marital property, in case equal division is inequitable, are set out in § (A) (1). Section (A) (2) of the Act provides:

> All other property shall be returned to the party who owned it prior to the marriage unless the court shall make some other division that the court deems equitable taking into consideration those factors enumerated in subparagraph (A) above, in which event the court must state in writing its basis and reasons for not returning the property to the party who owned it at the time of the marriage.

Section (B) provides:

> For the purpose of this statute "marital property" means all property acquired by either spouse subsequent to the marriage except:
>
> (1) Property acquired by gift, bequest, devise or descent;
>
> (2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise or descent; . . .

I see nothing ambiguous about the language of the above-quoted statute. It is quite obvious that the legislature intended that one party would not be allowed to pull a shenanigan on the other simply by marrying, getting property transferred into his name, and then shucking the spouse for someone else. Any interpretation other than the plain language of the statute requires a little bit of judicial legislation and a fertile imagination.

Let us look at what the husband said about how the property was acquired. He stated:

> . . . I did not contribute a dime to the purchase of the real property. Every dime that was put into the real

property we acquired during the marriage was received from her inheritance from her father. I never made a house payment from my funds. *** I was in the used car sales business and the money that financed the business came from my wife's guardianship estate left to her by her father. All of the money came from my wife's guardianship estate. *** The only income I had was from the business of selling autos and she furnished the money for that. I lost money and got out of the business and there was money left which I paid bills with. *** I'd say her money was my money, that's the way I looked at it. I came out of the business with the Corvette and I paid 55 for it and spent well over $1500 fixing it up. I have it in my possession now and it is titled in both our names. *** The only thing I had when we got married was a car and I couldn't even tell you what car that was. I believe it was a '76 Cutlass and my wife helped pay for it, it just came out of the account.  ...

After the parties were separated the husband went to Texas where he obtained employment for a salary netting him $250 per week. During this time he was living with his girlfriend in Texas and helping pay the rent, utilities and some of the groceries. Between the temporary hearing and order of October 10, 1979, and the final hearing in November 1980 the appellee paid only $61 child support, creating a delinquency of $1677.50. These parties were married in January 1978 and separated in September 1979. They were ages 17 and 19 at the time of the marriage.

The only reason Ark. Stat. Ann. § 34-1215 (Supp. 1981) remains on the books is to convert tenancy by the entirety to tenancy in common in case the chancellor fails to make a ruling as to that particular property. § 34-1215 is the codification of Act 340 of 1947, as amended by Act 457 of 1975. Act 705 is the latest legislative action and should take precedence over the earlier law in case of a conflict. The purpose of Act 705 was to bring our divorce statutes in line with our decisions and to update the law.

The majority opinion is a step backwards. It is contrary to the trend in Arkansas divorce law and infringes into the

rights of the legislature. I would follow the plain language of Act 705 and thereby prevent the appellee from enjoying the mistakes his former wife made.

Supplemental Opinion on Petition for Rehearing
delivered December 7, 1981

ROBERT H. DUDLEY, Justice. Susan Warren has filed a petition for rehearing with two contentions. One simply reargues interpretation of statutes, but on rehearing we do not consider such repetition. Rule 20 (g). The other concerns the impoundment of funds. We deny the petition for rehearing but desire to explicate that issue.

Susan Warren argues that she asked for a lien on James Warren's property for future child support. We have no statute authorizing a lien for future support and courts of equity have no inherent authority to grant one. Some states have held that statutory language to make "provision for . . . support and education of the minor children of the marriage" gives the implied authority to declare a lien in limited circumstances on specific items of property. *Jones* v. *Jones,* 294 P. 2d 304 (Okla.), 59 ALR 2d 651 (1956). This appears to be the majority view. Annotation: *Decree for Periodical Payments for Support or Alimony as a Lien on the Subject of a Declaration of Lien,* 59 ALR 2d 656, §4. While Ark. Stat. Ann. §34-1211 (Supp. 1981) is comparable to the Oklahoma statute, we have never adopted the majority view. As early as 1881 we held that there was no lien on a husband's land for future alimony payments. *Kurtz* v. *Kurtz,* 38 Ark. 119 (1881). By 1921 this concept was held to have become a rule of property *Whitmore* v. *Brown,* 147 Ark. 147, 227 S.W. 34 (1921). In *Brun* v. *Rembert,* 227 Ark. 241, 297 S.W. 2d 940 (1957) we held that the cases involving future alimony were applicable to cases involving future child support and affirmed that a decree for future child support is not a final decree upon which execution may issue or which creates a lien on real estate. The reason stated was that an

award of child support is not a final decree as to future payments because it can be prospectively modified. Petitioner Susan Warren is not entitled to prevail under her theory of enforcing a lien for future child support. However, this holding is not applicable to the situation where one has reduced past due child support to judgment, for in that case the judgment lien statute, Ark. Stat. Ann. § 29-130 (Repl. 1979), is operative.

The petitioner alternatively contends that even if she is not entitled to a lien on all of James Warren's property for future child support, she is entitled to have the property impounded as a bond pursuant to Ark. Stat. Ann. § 34-1211 (Supp. 1981). This court has long recognized that a chancery court has the inherent power to require a bond for payment of child support. *Zeddy* v. *Zeddy*, 180 Ark. 235, 21 S.W. 2d 157 (1929). The inherent power to order a bond could only be exercised when the obligor had defaulted or was about to leave the state. Clay, *Act 56-Bond for Child Support*, 5 Ark. L. Rev. 360 (1951). We have held that the obligor can be committed to jail for refusing to make such a bond. *Ex parte Caple*, 81 Ark. 504, 99 S.W. 830 (1907); *Ex parte Coulter*, 160 Ark. 550, 255 S.W. 15 (1923). The General Assembly broadened the chancellors' inherent power by statutorily authorizing a bond when there is any reason to believe the obligor might not pay. Ark. Stat. Ann. §34-1211 (A) (Supp. 1981). We recognize the public policy embraced in the statute and desire to give it a broad interpretation. Even so, we find no language in the statute which authorizes the seizure of one's property without limitation under the guise of a bond. The statute authorizing a requirement of security, and the bonds by inherent equitable authority, both contemplate notice to the recalcitrant obligor that he or she will be required, either voluntarily or involuntarily, to make a bond in some specific amount necessary to secure future payments. The bond is to be conditioned upon compliance with the order and shall be in such form and have such sureties as the court shall direct. In the case at bar James Warren was never ordered to make a bond, was not given the opportunity to make a bond and never attempted to make a bond. No conditions were made or met and no conditional pledges of property or sureties were allowed. There simply was no bond.

While there was no bond, there could have been a valid sequestration for the chancery court has the authority to impound property to insure future payment of child support. The general rule is that a court of equity is without the inherent power to impound property to secure the future payment of support. *Ring* v. *Ring,* 185 Va. 269, 38 S.E. 2d 471, 165 ALR 1237 (1946). Annotation: *Inherent Power of Court to Secure Future Payment of Alimony and Support Money,* 165 ALR 1243. However, for a century we have held that our courts of equity have the statutory authority to sequester the obligor's property to secure future payments in proper cases. In *Casteel* v. *Casteel,* 38 Ark. 477 (1882), this court held that while future alimony could not create a lien upon the obligor's land, payment might be secured pursuant to Gantt's Digest, § 2205. The case of *Rowell* v. *Rowell,* 184 Ark. 643, 43 S.W. 2d 243 (1931), held that § 3509, Crawford & Moses Digest, provided for sequestration. The statute cited in both of those cases was slightly modified in 1941 and is now codified as Ark. Stat. Ann. §34-1212 (Supp. 1981). It continues to provide for sequestration and we have held that, in its present form, it grants to the chancery court the authority to sequester an obligor's property to secure future payments. *Harbour* v. *Harbour,* 230 Ark. 627, 324 S.W. 2d 115 (1950). However, a sequestration of the obligor's property cannot be had without notice to the obligor. That notice should give the reason sequestration is being sought; for example, the defendant is able to pay but refuses to do so or the defendant is about to leave the state. See *Ex parte Caple,* supra. The order must show the nature and amount of property sought for sequestration, *Rowell* v. *Rowell,* supra, and it must provide the conditions upon which the property is to be returned to the obligor or transferred to the obligee or transferred to a third party. It ought to provide for the care, maintenance and reinvestment of the proceeds of the property. In the case before us this due process was not affordable to James Warren. This amounted to an arbitrary action. *Rowell* v. *Rowell,* supra.

In summation, while we do not recognize a lien on the obligor's real estate to insure the future payment of child support, we do have a statutory provision for sequestration of the obligor's property to insure the payment of future support. A sequestration of property requires notice of the

reason for sequestration and the order must provide the nature and amount of property to be sequestered and the conditions of sequestration. In addition, we have statutory bonds as well as bonds by the inherent authority of equity courts to secure future payment of child support. There are other proceedings for enforcement of child support orders, not material to this opinion, such as injunctions and restraining orders, contempt proceedings, judgment lien proceedings and proceedings to sell real or personal property of the obligor pursuant to Ark. Stat. Ann. § 34-2448 (Supp. 1981).

The petition for rehearing is denied.