COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Willis and Overton
Argued at Norfolk, Virginia


CARL A. BARRS
                                    MEMORANDUM OPINION*
v.        Record No. 2093-95-1    BY JUDGE JOSEPH E. BAKER
                                      AUGUST 20, 1996
ALICE C. BARRS


          FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                      Robert W. Curran, Judge

          James C. Roberts (Mays & Valentine, on
          briefs), for appellant.

          John F. Rixey (Rixey and Rixey, on brief),
          for appellee.


     Carl A. Barrs (husband) appeals from an award of spousal

support granted to Alice C. Barrs (wife) by a decree of divorce

entered by the Circuit Court of the City of Newport News (trial

court) on August 25, 1995.  Although the decree granted a divorce

and made equitable distribution, attorney's fees, and costs

awards, the sole issue presented by this appeal is whether the

spousal support award exceeded the discretionary authority with

which the trial court is endowed.

     There is little, if any, disagreement as to the value of the

many properties owned by husband as well as his latest annual

wage income or present net income from those properties.  Because

the parties are thoroughly familiar with the extensive record and

exhibits, we refer only to those necessary to an understanding of

--------
     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

this opinion.

Initial hearings were held by a commissioner in chancery to whom this matter was referred for his report and recommendations. The commissioner's report discloses that the parties married on October 7, 1957. They lived together as husband and wife for approximately thirty-two years. They have three children, all of whom are emancipated. The parties were fifty-six years of age at the time of the commissioner's report. Wife is unemployed and husband is a successful contractor and investor. Husband is in reasonably good health, while wife suffers from multiple sclerosis. Wife's condition is in remission, however, the probability of future medical care is likely, and she is generally not capable of employment. On or about September 30, 1989, husband left the marital home and did not return.

With respect to spousal support, the trial court accepted the commissioner's recommendation that wife be awarded $8,000 per month. In considering the award, the commissioner found husband's annual income to be $250,000. The commissioner considered wife's itemized list of expenses and noted that while several of the items could be reduced, the sum recommended was reasonable in that husband had estimated wife's annual expenses to be $60,400, and that estimate excluded mortgage payments and tax considerations.

Husband introduced a cash flow projection covering a twelve-month period from April 1993 through March 1994. Husband

testified in accord with the exhibit that, by the end of the time period which the exhibit covered, he would be required to expend a sum of more than $184,000 in excess of his income funds in order to meet his obligations. According to his testimony and exhibits, husband asserted that his income sources totaled $188,711, and that his expenditures required to maintain his position with marital investments totaled $141,870.

Husband concedes that at the time he left the family home in 1989 and in the year 1990, his income was substantially higher than during 1992 when the hearings before the commissioner were held. The commissioner reported that during the year 1989, in which the parties separated, the gross income shown on husband's federal tax return was $341,000 and that husband's 1990 and 1991 federal tax returns disclosed $632,000 and $332,000, respectively. Husband filed an exhibit claiming his "wage earnings" from his business were as follows: 1989 - $253,000, 1990 - $336,000, 1991 - $183,000, and 1992 - $130,000. Husband contends that although he still owns the properties from which his "gross incomes" were derived, he makes payments on sums due for loans secured by those properties which result in zero spendable income.

The determination whether a spouse is entitled to support and, if so, how much, is a matter within the discretion of the trial court and will not be disturbed on appeal unless it is clear that some injustice has been done. Oliver v. Oliver, 202

Va. 268, 272, 117 S.E.2d 59, 62 (1960); see also Dukelow v.
Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986), and cases
there cited.  The judgment of the trial court is presumed correct
and we may not disturb its ruling if there is credible evidence
to support it.  Steinberg v. Steinberg, 11 Va. App. 323, 329, 398
S.E.2d 507, 510 (1990); Code § 8.01-680.  Thus, in regard to the
amount of the spousal support award, we will reverse such award
only for an abuse of discretion or the judge's failure to
consider all the factors set forth in Code § 20-107.1.  Barnes v.
Barnes, 16 Va. App. 98, 103, 428 S.E.2d 294, 298 (1993).  It is
presumed further that a trial court properly based its decision
on the evidence presented, Williams v. Williams, 14 Va. App. 217,
221, 415 S.E.2d 252, 254 (1992), and on appeal the trial court's
findings must be accorded great deference.  Bandas v. Bandas, 16
Va. App. 427, 432, 430 S.E.2d 706, 708 (1993); Hulcher v.
Hulcher, 177 Va. 12, 18, 12 S.E.2d 767, 769 (1941).  A review of
the memorandum filed by the trial court and the decree of divorce
makes it clear that the trial court properly considered the
provisions of Code § 20-107.1.

> In awarding spousal support, the chancellor
> must consider the relative needs and
> abilities of the parties.  He is guided by
> the nine factors that are set forth in Code
> § 20-107.1.  When the chancellor has given
> due consideration to these factors, his
> determination will not be disturbed on appeal
> except for a clear abuse of discretion.

Collier v. Collier, 2 Va. App. 125, 129, 341 S.E.2d 827, 829

(1986).

In the commissioner's report, considered by the trial court, was the following:

> The most difficult area in which to arrive at a confident result is the spousal support request made by the wife. Throughout this couple's marriage, there is no question that their standard of living was very high. They traveled extensively, had a beautiful home, and had a boat at the end of their marriage which had a mortgage payment of $5,000 per month. The wife's expert testified that she will need $160,000 per year in support and maintenance, which is $61,000 for taxes and $99,000 per year for expenses. The wife discounts this figure and requests the amount of $12,000 per month or $144,000 per year.
>
> Exhibit #12 for the wife indicates that the husband's gross income on his federal tax returns has been $341,000 (1989); $632,000 (1990); and $332,000 (1991). Exhibit #15 of the husband shows his wage earnings from his business at $253,000 (1989); $336,000 (1990); $183,000 (1991); and $130,000 (1992). For 1993, his salary appears to be in the area of $125,000. In addition to his salary, however, the husband has also received a payment of $120,000 from his business in rent each year for the Grafton property, and his various accountings indicate a number of other additions to income from various investments on an annual basis. However, the husband also has a significant number of required investment expenditures, which, if not made, will decrease or ruin the value of his business interests and, if non-payment is assumed, necessitate a re-evaluation and a reduction in the value of the marital property under § 20-107.3. The most current salary statement offered in evidence before the commissioner is for 1992 in the amount of $130,000, and the commissioner will find that the annual income to Mr. Barrs is $250,000 per year, including the rent received from his company for the Grafton real estate.
>
> *     *     *     *     *     *     *

- 5 -

> After considering the award of marital property recommended under § 20-107.3, and after a consideration of the statutory factors set forth in § 20-107.1, the commissioner recommends that the wife be awarded the amount of $8,000 per month, until further order of the court.[1]

The trial court accepted the recommendations of the commissioner and the final divorce decree ordered husband to pay monthly to wife the sum of $8,000 and, in addition, an amount not to exceed $300 per month toward health insurance premiums.  On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong.  Sprott v. Sprott, 233 Va. 238, 240, 355 S.E.2d 881, 882 (1987).

> In a divorce case, where a claim for alimony is made by a wife who has been held blameless for the marital breach, the law imposes upon the husband the duty, within the limits of his financial ability, to maintain his former wife according to the station in life to which she was accustomed during the marriage.

Klotz v. Klotz, 203 Va. 677, 680, 127 S.E.2d 104, 106 (1962). Where the wife is possessed of a sizeable estate in her own right, the law does not require her to invade that estate to relieve the obligation of her former husband whose actions have brought an end to their marriage.  Id.; Ring v. Ring, 185 Va. 269, 273-74, 38 S.E.2d 471, 473 (1946).

> In fixing the amount of alimony, the court must look to the financial needs of the wife,

---

[1]The commissioner also recommended that husband be required to pay wife a sum not to exceed $300 per month toward the cost of medical insurance premiums in accord with Code § 20-107.1.

> her age, physical condition and ability to
> earn, and balance against these circumstances
> the financial ability of the husband to pay,
> considering his income and his ability to
> earn.  The amount awarded must, in any event,
> be fair and just under all the circumstances
> of the case.

Klotz, 203 Va. at 680, 127 S.E.2d at 106 (citations omitted).

Husband contends that the trial court abused its discretion when it made the spousal support award because his annual income is limited to $130,000.  That assertion fails to consider the requirement that a fair allotment to a wife is determined by balancing her needs against the ability of the husband to pay, considering both his actual earnings and his capacity to earn, whether from his personal efforts or his property.  Id.; Taylor v. Taylor, 203 Va. 1, 3, 121 S.E.2d 753, 755 (1961).

> In determining the propriety of allowing
> alimony and in fixing its amount, there must
> be taken into consideration, along with all
> of the other circumstances of the particular
> case, the needs of the wife and the ability
> of the husband to pay--not necessarily the
> amount of his actual earnings, but his
> ability to earn.

Hawkins v. Hawkins, 187 Va. 595, 600, 47 S.E.2d 436, 439 (1948) (citations omitted).

As noted above, the "ability of the husband to pay is determined not necessarily by the amount of his actual earnings, but also by his ability to earn and what, under all the circumstances [including his possessions], will be a fair and just allotment."  Id. at 600-01, 47 S.E.2d at 439 (alteration in original).  In reaching its decision, income averaging is an

acceptable method of determining a spouse's ability to earn.  See Russell v. Russell, 216 Va. 432, 219 S.E.2d 689 (1975); Klotz, 203 Va. 677, 127 S.E.2d 104; Ring, 185 Va. 269, 28 S.E.2d 471.

In view of the history of husband's ability to earn income and considering the investment properties he owns, we cannot say that the trial court's decision was plainly wrong or that it abused its discretion in making the spousal support award of which husband complains.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.