**CUMBERLAND PRESBYTERY OF the SYNOD OF THE MID-WEST OF the CUMBERLAND PRESBYTERIAN CHURCH, Movant,**

v.

**James Earlene BRANSTETTER, James Ray Reece, and Larry Roger Reece, Respondents.**

**No. 90–SC–789–DG.**

Supreme Court of Kentucky.

Feb. 13, 1992.

Walter A. Baker, Glasgow, for movant.

Bobby H. Richardson, Glasgow, Herbert B. Sparks, Edmonton, for respondents.

SPAIN, Justice.

As have so many others, this case presents a dispute among church members over the control of a local church's property. Here a schism developed between opposing factions in the Wisdom Cumberland Presbyterian Church of Metcalfe County. The origin of this church is reflected in the Minutes of the Cumberland Presbytery dated September 30, 1911, which recite that "a new church of eleven members which was organized by Rev. J.L. Kirgan at Dripping

Spring Schoolhouse in Metcalfe Co., Ky., on August 12, 1911, by the name of Wisdom was taken under the care of this Presbytery under the Constitution of the Cumberland Presbyterian Church, and ruling elder J.T. Ball was enrolled as a representative from the same." (Record, pp. 126–127). On October 18, 1987, fifty-eight members allied with the pastor voted to withdraw or secede from the Cumberland Presbyterian denomination while twenty-six members voted to remain. Some additional thirty or so active and inactive members were not present or did not vote.

Earlier in the month, at the October 3, 1987, meeting of the Cumberland Presbytery, Respondent Branstetter, the Pastor of the Wisdom Church, requested to be dropped from the roll of ordained ministers of the Presbytery, in consideration of which, pending charges against him were dropped by Presbytery and his resignation was accepted.

At its next meeting following the vote of the congregation of the Wisdom Church, the Cumberland Presbytery took action to dissolve the Session of the local church. It also appointed a Commission to oversee the affairs of the church on behalf of the Presbytery, the Kentucky Synod (now the Synod of the Mid–West), and the Cumberland Presbyterian Church. A new Treasurer and Clerk of Session were appointed by Presbytery's Commission and the former Church Pastor, Treasurer, and Clerk were requested to turn over to them the funds and records of the church. Upon their refusal, the Presbytery brought suit in December 1987 against them in Metcalfe Circuit Court seeking injunctions to bar the former pastor from preaching and conducting worship services, to require the other defendants to turn over church funds and records, and to bar all of the defendants from exercising any control or right to the real estate and church building of the Wisdom Cumberland Presbyterian Church.

Following a hearing on motions for temporary injunctions in December 1987, a half-day bench trial in March 1989, and the filing of written briefs by counsel, the trial judge entered an Order and Judgment on June 5, 1989, denying injunctive relief to the plaintiff Presbytery and granting the "majority congregation of the Wisdom Church" the use and control of the church property and funds. Upon appeal by the Presbytery, the Court of Appeals stated that it could not say that the trial court's decision was clearly erroneous "[b]ased on the conflicting evidence before [it]," and accordingly it affirmed. We granted discretionary review and now reverse.

The system of government of the Cumberland Presbyterian Church, like other denominations that constitute the Presbyterian family of Reformed churches, is comprised of four courts or judicatories. In ascending order beginning at the local or "particular" church level, they are the Session, the Presbytery, the Synod, and the General Assembly. These bodies are representative democracies wherein elders or presbyters, both lay and clergy, represent the congregations or judicatories who elect them as officers or delegates. In this sense, the churches in these denominations are connectional or hierarchical as contrasted with congregational or independent churches, such as Baptist churches. Further, they are not episcopal, having no bishops; nor are they prelatical, having no ecclesiastics of superior rank and authority to other ministers.

The Cumberland Presbyterian Church is governed by a written Constitution in addition to a Confession of Faith, Rules of Discipline, and a Directory for Worship.

For more than one hundred years, courts usually resolved disputes concerning control of church property by reliance upon principles established by the U.S. Supreme Court in the case of *Watson v. Jones*, 80 U.S. 679, 13 Wall. 679, 20 L.Ed. 666 (1872). Interestingly enough, that case pitted against each other two rival groups claiming to represent the Third or Walnut Street Presbyterian Church in Louisville. The Federal trial court entered judgment in favor of the plaintiffs, representing over 115 members of the local church who had been declared by the General Assembly of the Presbyterian Church of the United States to be the true and only Walnut Street Pres-

byterian Church of Louisville. The defendants, who represented a faction of approximately thirty former members of said church, had seceded and withdrawn and sought possession of the church property, claiming to be the true members and officers of the church.

In affirming the trial court, the Supreme Court applied what has become known as the "compulsory deference rule," appropriate in cases of property acquired in any of the usual modes for the general use of a religious congregation which is itself part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government. The opinion stated as follows:

The case before us is one of this class, growing out of a schism which has divided the congregation and its officers, and the presbytery and synod, and which appeals to the courts to determine the right to the use of the property so acquired. Here is no case of property devoted forever by the instrument which conveyed it, or by any specific declaration of its owner, to the support of any special religious dogmas, or any peculiar form of worship, but of property purchased for the use of a religious congregation, and so long as any existing religious congregation can be ascertained to be that congregation, or its regular and legitimate successor, it is entitled to the use of the property. In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the Presbytery over the session or local church, the Synod over the Presbytery, and the general assembly over all. These are called, in the language of the church organs, "judicatories," and they entertain appeals from the decisions of those below, and prescribe corrective measures in other cases.

In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, *whenever the questions of discipline or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them.*

*Id.* at 80 U.S. 726–727. (Emphasis added.)

One of the leading Kentucky cases applying the compulsory deference rule is *Clay v. Crawford,* Ky., 298 Ky. 654, 183 S.W.2d 797 (1944). In that case, the presiding Bishop of the Louisville area of the African Methodist Episcopal Church transferred the pastor of Asbury Chapel and appointed a new pastor to that church. The officers and many members of the congregation resented the transfer and refused to receive the new pastor, Reverend Crawford. He brought suit in the Jefferson Circuit Court against the trustees and they countersued. The trustees, other officers of the church, and over 150 members adopted a resolution at a meeting, declaring their withdrawal from and severance of connection with the Conference of the African Methodist Episcopal Church. The seceding group appointed new trustees who executed a deed transferring the church property to themselves and others on behalf of the new independent organization. The Board of Incorporators of the African Methodist Episcopal Church, the parent organization, intervened and asked that its title as beneficial owner be quieted. The trial court rendered judgment for the original group, whereupon the new organization and its trustees appealed.

In a scholarly opinion, the late Commissioner Osso W. Stanley described the Methodist Church as a denomination, although having an episcopacy, not prelatical in form

because of the distinctive character of the powers and functions of the bishops, and because it is connectional and governed through bodies called Conferences, but with the congregations acting through local officers having a considerable degree of autonomy in secular matters and, therefore, classified as presbyterial in form.

In *Clay*, the opinion observes that the appointment of the new pastor was proper and then states:

> The consequence of all this is that the local church is irrevocably bound to the parent body except as its law may permit division or severance. There can be no schism or division in the usual sense in a local Society of the Methodist Church, for in any division there is a secession of one part or group. In an adjudication of rights, the criterion is identity, not of individuals, but of organization. The question is which of the rival factions is the true representative and successor or continuation of that local society as it existed prior to the division. The answer is to be found by ascertaining which of them adheres to or is sanctioned by the governing or central body. The leading case on this subject is *Watson v. Jones*, [(8 U.S.)] 13 Wall. 679, 20 L.Ed. 666, involving a Presbyterian Church in Louisville, a phase of the division having been considered by this court in *Watson v. Avery*, 65 Ky. 332, 2 Bush 332. (Citations omitted.)

*Clay v. Crawford*, 298 Ky. 654, 183 S.W.2d 797, 800 (1944).

Finally, the court concluded that the trial court had correctly adjudged that the group which seceded or withdrew had forfeited their right to the use and occupancy of the property and that the deeds executed by them were void and should be cancelled. *Id.* 183 S.W.2d at 804.

Application of the "compulsory deference rule" to the facts of the dispute before us leads to the inescapable conclusion that the minority faction of the Wisdom Church, which "adheres to" and "is sanctioned by" the central body, the Cumberland Presbytery of the Synod of the Mid–West of the Cumberland Presbyterian Church, must prevail.

Against this background of application of the "compulsory deference rule," we now examine the 1979 U.S. Supreme Court case of *Jones v. Wolf*, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979), which, at first blush, appears to complicate matters.

The facts in the *Wolf* case are virtually identical with those in this case. A schism in the Vineville Presbyterian Church of Macon, Georgia, resulted in 163 members and the pastor voting to separate from the Presbyterian Church in the United States (PCUS). Ninety-four members voted against the resolution. The majority then united with another denomination. The affected Presbytery appointed a commission to investigate and it eventually issued a ruling declaring that the minority faction constituted the true congregation of the Vineville Presbyterian Church. Representatives of the minority faction brought suit in state court seeking declaratory and injunctive orders establishing their right to exclusive possession and use of the Vineville church property as a member congregation of the PCUS. The trial court, purporting to apply Georgia's "neutral principles of law" approach to church property disputes, granted judgment for the majority faction. The Supreme Court of Georgia affirmed, holding that the trial court had correctly stated and applied Georgia law.

In ruling as they did, the Georgia courts apparently were reacting to an earlier U.S. Supreme Court decision, *Presbyterian Church v. Hull Church*, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). This decision reversed the Georgia Supreme Court for improperly deciding a church property dispute case based upon whether a denomination had "substantially abandoned" the tenets of faith and practice as they had existed at an earlier time. In the reversal, the Georgia court was directed to find another method for resolving church property disputes that did not draw the state courts "into religious controversies" and the suggestion was dropped that "there are neutral principles of law, developed for use in all property disputes, which can be applied

without 'establishing' churches to which property is awarded." *Id.*, 393 U.S., at 449, 89 S.Ct., at 606.

In any event, the U.S. Supreme Court in the *Wolf* case approved the use of the "neutral principles of law" approach by the Georgia courts since that approach involved "no consideration of doctrinal matters, whether the ritual and liturgy of worship or the tenets of faith," which test was prescribed in *Maryland & Va. Churches v. Sharpsburg Church*, 396 U.S. 367, 368, 90 S.Ct. 499, 500, 24 L.Ed.2d 582 (1970).

Notwithstanding the approval of their use of the "neutral principles" approach, the U.S. Supreme Court vacated the judgment and remanded the case while criticizing the Georgia courts for failing to recognize that the *Wolf* case presented a new problem, unlike earlier cited cases, in that the local church was itself divided between two factions, one of which had already been determined to be the "true congregation" by the general denomination. Neither Georgia court had discussed or analyzed its reasoning before concluding that title to the property was in the local church and that said church was represented by the majority faction rather than the minority. The Georgia courts had failed to state whether Georgia had adopted a presumptive rule of majority representation and, if so, whether that presumption could be overcome by corporate charter or the constitution of the general church.

As to this point, the majority of the U.S. Supreme Court states in clear language that, under the neutral-principles approach, the outcome of a church property dispute is not foreordained.

> *At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property.* They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. *Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church.* The burden involved in taking such steps

will be minimal. *And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form. Wolf, supra,* 443 U.S. at 606, 99 S.Ct. at 3027. (Emphasis added and footnote omitted.)

Decisive in this case involving the Wisdom Church, is the undisputed evidence that the Cumberland Presbyterian Church through its General Assembly, Presbyteries, and local churches revised its written Constitution in 1984 (before the dispute erupted in the Wisdom Church) to provide as follows:

### 3.30 Of Property

This section is declaratory of principles to which the Cumberland Presbyterian Church/Second Cumberland Presbyterian Church and their antecedent church bodies have adhered from the inception of the presbyterian form of church government.

### FOR CUMBERLAND PRESBYTERIAN CHURCH

**3.31** The provisions of church government as set forth in the Constitution, Rules of Discipline, and Rules of Order prescribing the manner in which decisions are made, reviewed, and corrected within this church are applicable to all matters pertaining to property.

**3.32** The Cumberland Presbyterian Church is a connectional church and all lower judicatories of the church to-wit: synod, presbytery, and the particular churches are parts of that body and therefore *all property held by or for a particular church,* a presbytery, a synod, the General Assembly, or the Cumberland Presbyterian Church, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or of a more inclusive judicatory or retained for the production of income, and whether or not the deed to the property so states, *is held in trust nevertheless for the use and benefit of the Cum-*

*berland Presbyterian Church.* (Emphasis added.)

**3.33** Whenever property of, or held for, a particular church of the Cumberland Presbyterian Church, ceases to be used by the church, as a particular church of the Cumberland Presbyterian Church in accordance with this Constitution, such property shall be held, used, applied, transferred or sold as provided by the presbytery in which that particular church is located.

**3.34** Whenever a particular church is formally dissolved by the presbytery, or has become extinct by reason of dispersal of its members, the abandonment of its work, or other cause, such property as it may have shall be held, used, and applied for such uses, purposes, and trusts as the presbytery in which said particular church is located may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of the Cumberland Presbyterian Church.

**3.35** A particular church shall not sell, nor lease its real property used for purposes of worship, nurture or ministry, without the written permission of the presbytery in which the particular church is located, transmitted through the session of the particular church.

At trial, the appellee Reverend Branstetter admitted on cross-examination that he was a delegate to the General Assembly which adopted the said revisions to the Constitution, that he voted for approval and ratification, and that said Constitution was duly adopted pursuant to the law and government of the denomination.

As can be seen above, the Cumberland Presbyterian denomination followed to a T the suggestion of the U.S. Supreme Court in *Wolf* as to a method of ensuring "that the faction loyal to the hierarchical church will retain the church property."

Before concluding this opinion, perhaps we should observe that we feel our earlier decision in *Bjorkman v. Protestant Episcopal Church,* Ky., 759 S.W.2d 583 (1988), is in no way inconsistent. There we ap-

plied neutral principles of law to the facts at hand, but without overruling previous distinguishable cases, such as *Clay v. Crawford, supra.* Of particular significance in *Bjorkman* was the fact that it involved a dispute between a general church and a unanimous local congregation concerning control of church property. And as Justice Lambert correctly observed in the Majority Opinion, the four dissenting justices in *Jones v. Wolf, supra,* who favored the compulsory deference doctrine, conceded that the neutral principles rule suffices to settle such disputes. *Bjorkman, supra,* at 585.

Moreover, in *Bjorkman* we had no general church constitutional pronouncement adopted before the dispute erupted, mandating expressly that all property was to be held in favor of the denominational church.

Our conclusion is that the trial court and Court of Appeals erred in not holding that the Reverend Branstetter and his followers forfeited their right to the use and occupancy of the Wisdom Church property, funds, and records when they withdrew or seceded from the Cumberland Presbytery of the Synod of the Mid–West of the Cumberland Presbyterian Church. The judgment of the trial court is reversed and this cause is remanded for entry of judgment for the movant in accordance with this opinion.

All concur.