645 So.2d 715 (1994)
BETHANY INDEPENDENT CHURCH, Plaintiff-Appellee,
v.
Richard STEWART, Defendant-Appellant.
CITY BANK AND TRUST COMPANY OF NATCHITOCHES, Plaintiff-Appellee,
v.
BETHANY CUMBERLAND PRESBYTERIAN CHURCH and Pinetree Cumberland Presbyterian Church, Defendants-Appellees.
TRINITY PRESBYTERY OF the CUMBERLAND PRESBYTERIAN CHURCH, Plaintiff-Appellant,
v.
Nellie KEES, Winfred Kees and Clarence Layfield, Jr., et al., Defendants-Appellees.
Nos. 93-1252, 94-75 and 94-76.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
Rehearing Denied November 7, 1994.
Writ Denied February 9, 1995.
*716 Thomas H. Matheny, John G. Williams, for Richard Stewart.
Donald Gray Horton, John S. Stephens, for Bethany Independent Church in No. 93-1252.
Donald Gray Horton, John S. Stephens, for Bethany Cumberland Presbyterian, et al. in No. 94-75.
John S. Stephens, for Nellie Kees, et al.
Donald Gray Horton, for Bethany Independent Church in No. 94-76.
Henry Cole Gahagan Jr., for City Bank and Trust Co. of Natchitoches.
Before GUIDRY, C.J., and DECUIR and PETERS, JJ.
PETERS, Judge.
These consolidated cases involve a dispute over church property in Natchitoches Parish, Louisiana. After a long affiliation with the Cumberland Presbyterian Church, part of the congregation of Bethany Cumberland *717 Presbyterian Church (Bethany Cumberland), an unincorporated religious association, decided to dissociate themselves from the parent denomination. They formed a Louisiana corporation entitled Bethany Independent Church, Inc., (Bethany Independent), and transferred all of the assets of Bethany Cumberland into the corporate name. The corporation then attempted to evict the Bethany Cumberland pastor from church property. Trinity Presbytery of the Cumberland Presbyterian Church (Trinity Presbytery) then entered the dispute for the parent church opposing the actions of the corporation. The trial court resolved the resulting dispute over ownership in favor of Bethany Independent.

ORGANIZATION OF THE CUMBERLAND PRESBYTERIAN CHURCH
According to exhibits in the record, the Cumberland Presbyterian Church was founded in Tennessee in 1810. As the new church expanded it began to develop a consistent doctrinal and governmental structure for the expansion churches to follow. In 1883, the General Assembly adopted a document entitled Confession of Faith and Government of the Cumberland Presbyterian Church (Confession of Faith, 1883) which codified the general beliefs and organization of the religious denomination into two parts, doctrine and government. The latter division is at issue in this litigation.
A part of the Confession of Faith, 1883, was a constitution that divided the church into four governmental levels. The lowest was the church session which exercised jurisdiction over a single church. Next came the presbytery which exercised jurisdiction over the church session and the churches of a given area. The synod then exercised jurisdiction over an area consisting of three or more presbyteries. Finally, the General Assembly exercised jurisdiction over the church as a whole, including the local churches, the presbyteries, and the synods.
The Constitution required all who wished to be church members to submit to a certain religious doctrine and "a certain form of government." Confession of Faith, 1883, Constitution, Section 4. A candidate for membership was required to enter a covenant with the church body by answering the following question in the affirmative.
"Do you, in reliance on God for strength, solemnly promise and covenant with God and each other that you will walk together as an organized Church on the principles of the Government of the Cumberland Presbyterian Church; that you will support the gospel as God has prospered you, and that you will study the purity and harmony of the whole body?"
Confession of Faith, 1883, Constitution, Section 7.
The codification of 1883 had no provisions concerning ownership of property by the parent church or the subordinate churches.
In 1977, the General Assembly voted to revise the Confession of Faith, 1883. The General Assembly adopted the work product of the revision committee in 1984. The Confession of Faith and Government of the Cumberland Presbyterian Church of 1984, (Confession of Faith, 1984) is similar in physical arrangement to its predecessor being also divided into doctrine and government. However, it is more specific than its predecessor in some areas and covers areas not previously covered.
Under the new codification, the session, presbytery, synod, and General Assembly organizational structure is maintained, a member must still enter a covenant, and must accept the church form of government. Confession of Faith, 1984, Constitution, Section 2.01. However, the new covenant language is more specific in what is expected of a member.
"Do you, in reliance upon God for strength, solemnly promise and covenant with God and each other that you will walk together as an organized church according to the government of the Cumberland Presbyterian Church... that you will support the gospel as God has prospered you; that you will maintain this church, not only with your gifts, but also with your support of its work by your efforts and prayers; that you will seek in its fellowship to glorify the name and further the cause of our Lord Jesus Christ; and that you will work to *718 maintain the purity and harmony of the whole body?"
Confession of Faith, 1984, Constitution, Section 2.42(b).
By accepting membership, an individual subjects himself to the jurisdiction of the session of his church. Confession of Faith, 1984, Constitution, Section 2.21.
Ownership of property is specifically addressed by the Confession of Faith, 1984, Constitution, Section 3.32.
"3.32 The Cumberland Presbyterian Church is a connectional church and all lower judicatories of the church to-wit: synod, presbytery, and the particular churches are parts of that body and therefore all property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Cumberland Presbyterian Church, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or of a more inclusive judicatory or retained for the production of income, and whether or not the deed to the property so states, is held in trust nevertheless for the use and benefit of the Cumberland Presbyterian Church."
Additionally, if a church ceases to exist or is dissolved, the presbytery in which the church was located assumes responsibility for the property according to the Confession of Faith, 1984, Constitution, Sections 3.33 and 3.34.
"3.33 Whenever property of, or held for, a particular church of the Cumberland Presbyterian Church, ceases to be used by the church, as a particular church of the Cumberland Presbyterian Church in accordance with this Constitution, such property shall be held, used, applied, transferred or sold as provided by the presbytery in which that particular church is located. 3.34 Whenever a particular church is formally dissolved by the presbytery, or has become extinct by reason of dispersal of its members, the abandonment of its work, or other cause, such property as it may have shall be held, used, and applied for such uses, purposes, and trusts as the presbytery in which said particular church is located may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of the Cumberland Presbyterian Church."
The rules concerning property are now so specific that a particular church is prohibited from selling or leasing its "real property used for purposes of worship, nurture or ministry" without written permission of the presbytery having jurisdiction over the church. Confession of Faith, 1984, Constitution, Section 3.35.

ORGANIZATION OF THE LOCAL CHURCH
Sometime before 1872, a church was organized in Natchitoches Parish, in affiliation with the Cumberland Presbyterian Church. It was not originally known as the Bethany Cumberland Presbyterian Church and the record is unclear as to when the members began to refer to the church by that name. The local church maintained its affiliation with the Cumberland Presbyterian Church until the current dispute arose.
The local church acquired immovable property in three separate transactions. The first tract was acquired in 1872. The deed of transfer identified the vendee as certain individuals acting as the Trustees of Cumberland Presbyterian Church. It was not until 1955, that a second tract was acquired. The vendee identified in that deed of transfer was the Cumberland Presbyterian Church represented by Urson Backle and J.T. Ryles as Trustees. The third tract was acquired in 1960. This is the only deed of transfer which reflects Bethany Cumberland Presbyterian Church as vendee. The three tracts are contiguous, and the church building, the manse, and a cemetery are located on the properties.

CURRENT DISPUTE
In 1992, discord arose within the Bethany Cumberland Presbyterian Church, and some members began a movement to withdraw its affiliation with the national church. The church session asked Trinity Presbytery to assist in resolving the dispute. Trinity Presbytery *719 is the presbytery having jurisdiction over Bethany Cumberland. When no settlement was reached, Trinity Presbytery sent a commission to assume the duties of the church.
In November of 1992, those seeking to dissociate themselves from the parent church formed a nonprofit corporation entitled Bethany Independent Church, Inc. On December 9, 1992, Clarence Layfield, the incorporator of Bethany Independent Church, Inc., executed a document purporting to transfer the three tracts described herein into the name of the corporation. The vendor in the deed of transfer was identified as
"BETHANY INDEPENDENT CHURCH, formerly known as the BETHANY CUMBERLAND PRESBYTERIAN CHURCH, an unincorporated association organized under the laws of the State of Louisiana, who do hereby make this transfer pursuant to Title 12 of the Revised Statutes of 1950 as amended herein represented by CLARENCE LAYFIELD, duly authorized by resolution of the Congregation dated November 7, 1992, a copy of the minutes of said meeting are attached hereto and made a part hereof."
No resolution is attached to the exhibit in the record. The vendee is identified as "BETHANY INDEPENDENT CHURCH, a non-profit corporation domiciled in Natchitoches, Natchitoches Parish, Louisiana." Additionally, Bethany Independent claimed ownership of all cash and movable property held in the name of Bethany Cumberland, changed the locks on the church doors, and gave notice to the Bethany Cumberland minister, Richard Stewart, to vacate the manse.
Trinity Presbytery filed for injunctive relief and, by amended petition, to be recognized as owner of the Bethany Cumberland assets, both movable and immovable. Bethany Independent responded by asking the court to order the return of items taken by members loyal to Bethany Cumberland, and for damages. (Docket Number 94-76). Also, Bethany Independent filed an action to evict Stewart from the manse. (Docket Number 93-1252). City Bank and Trust Company of Natchitoches (City Bank) joined the litigation by way of concursus. (Docket Number 94-75). It sought determination of the proper payment of funds on deposit in the name of Bethany Cumberland. These matters were consolidated at the trial level and remain consolidated on appeal.
After trial, and by written reasons, the trial court made the following ruling.
"The Court rules that the congregation of the Bethany Independent Church is the legal owner of the three (3) tracts of land, together with improvements found thereon and more fully described in the three (3) deeds which have been introduced as evidence in this case. The Court further rules that for the same reasons, the Bethany Independent Church is the true and lawful owner of the bank account in the City Bank & Trust Company of Natchitoches. The Court further rules that Richard Stewart is not a member of the congregation of Bethany Independent Church and, therefore, the eviction sought by the plaintiff in Suit Number 64,774(B) is granted, and the defendant must vacate the premises within the time limit required by Law. The Petition for a Temporary Restraining Order and Permanent Injunction sought in Suit Number 64,641(B) is denied and dismissed."
It is from this ruling that Trinity Presbytery and Stewart appeal.

ANALYSIS
The determination of ownership resolves the other issues in this litigation. Therefore, the first issue to be resolved is that of the power of this court to hear and decide that issue.
Civil courts are prohibited from interfering in ecclesiastical matters of a religious group, including specifically those concerning religious discipline, faith, rule, custom, or law. LeBlanc v. Davis, 432 So.2d 239 (La.1983) citing Serbian Eastern Orthodox Diocese for United States of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976), and Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982). This prohibition applies in property matters as the First Amendment of the United States Constitution and Article 1, *720 Section 4 of the Louisiana Constitution prohibit civil courts from resolving church property disputes involving religious doctrine and practice. Fluker Community Church, supra.
However, our courts have recognized an exception to the general rule where the property issue does not involve doctrinal controversy. In Fluker, supra, the Louisiana Supreme Court has adopted the "neutral principles of law" analysis of Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) in resolving such disputes. Quoting from Jones v. Wolf, the court established the method of analysis to be as follows:
"The application of the neutral principles approach, of course, is not wholly free of difficulty. The method, as it has evolved in Georgia, and as approved by the Supreme Court in Jones v. Wolf, requires a civil court to examine certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. As the high court observed:
`In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining whether the document indicates that the parties have intended to create a trust. In addition, there may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. 443 U.S. at 604, 99 S.Ct. at 3026, 61 L.Ed.2d at 785.'"

Fluker Community Church, supra, 419 So.2d at 447.
In the matter before the court no interpretation or evaluation of ecclesiastical doctrine or practice is required to decide the ownership of the property, and therefore, the court does have subject matter jurisdiction.
In cases involving alienation of property by a nonprofit, unincorporated association, Louisiana has legislatively adopted a presumptive rule of majority representation. Louisiana Revised Statutes 9:1051. However, this presumption is overcome by the showing of a contrary intention within the constitution, charter, by-laws, rules, or regulations under which the association is organized or governed. Fluker Community Church v. Hitchens, supra.
Trinity Presbytery claims its right as owner of the property on the basis of the church rules and regulations as set forth in its Constitution, not on a deed in its name. Specifically, Trinity Presbytery relies on Sections 3.30 through 3.35 of the Confession of Faith, 1984. In Louisiana District, Church of the Nazarene v. Church of the Nazarene, 132 So.2d 667, 680 (La.App. 1st Cir.1961), it was recognized that church regulations should be considered in determining property disputes. The court stated:
"Since in the various religious sects or denominations local congregations submit to a greater or lesser degree to the authority of the general church, it necessarily follows the constitution, rules, regulations and discipline of the general church which the local subordinate has accepted and embraced willingly in each case determine the extent of the authority of the local church to control church property whether held by the local group in its own name or held in trust for the general organization."
Churches purporting to be associated with the Cumberland Presbyterian Church clearly subject themselves to its rules and governmental structure and its doctrine.
Bethany Independent first argues that there is no evidence of the membership of Bethany Cumberland ever subscribing to the provisions of either version of the Confession of Faith. However, the record does not support this conclusion. The principal incorporator of Bethany Independent Church, Inc., testified as follows:
"Q And do you not agree, Mr. Layfield, that the Trinity Presbytery of the Cumberland Presbyterian Church, and the Bethany Presbyterian Church were regulated and ruled by the 1984 Confession of Faith which amended the earlier Confession of Faith?

*721 A Would you please restate that?
Q That your rules and regulations, a copy of which Mr. Horton has, and a copy of which has been placed in evidence before the court, that these were the rules and regulations that regulated the affairs of the church, of your church?
A That's.... that's true."
Therefore, even those who seek to claim title adverse to the parent church acknowledge that, prior to the dispute, they were governed by the internal structure of the parent church.
Bethany Independent also claims superior title because its deed of acquisition is by authentic act. Louisiana Civil Code articles 1833 and 1839. The protection afforded by the authentic act relates to third parties who might be affected by reliance on the public records. Louisiana Civil Code article 1839 and Louisiana Revised Statutes 9:2721. Even if Bethany Independent can be considered a third party in this dispute, the deed relied upon by Bethany Independent does not comply with the law relative to transfers from unincorporated associations.
Transfers from unincorporated associations to nonprofit corporations are special transfers governed by special procedures depending on the purpose of the transfer. When a corporation is formed for the sole purpose of transferring the property of an unincorporated association into the new structure the corporate law prevails.
"C. Whenever any property has been acquired by one or more persons acting as trustees, or in any other capacity, for and in the name of any unincorporated association for religious, charitable or educational purposes, upon the incorporation of said association as a nonprofit corporation, a transfer to the corporation, made by the persons so acquiring the property or their survivors, shall vest the title and ownership of the property in the corporation as fully as if the transfer had been made by all of these persons, free of any claims of the heirs of any of these persons who may have died prior to the transfer. In the event of the death of all of the trustees or other persons so acquiring the property before a formal transfer has been made to the corporation, the title and ownership of the property shall be vested in the corporation, provided that the corporation has had possession of the property as owner, during the lifetime of the trustees or subsequently, for a period of ten years."
La.R.S. 12:207(C).
Bethany Independent cannot rely on this statute as authority for the transfer herein. The vendor represents a dissident group of the main church and held no office within Bethany Cumberland. Even if one assumes for purposes of this opinion only that all of the trustees have died and no successors have been appointed, the corporation has not had possession, as owner, for a period of ten years.
A nonprofit, unincorporated association can transfer property to a separate entity. However, the transaction must be authorized by resolution adopted by a majority of the association's members who vote on the resolution at a meeting especially called for such purpose. Louisiana Revised Statutes 9:1051(A). The statute provides that the publishing of a notice in the official journal of the parish where a majority of the members reside, or if no official journal exists, in a newspaper of general circulation in the parish is a prerequisite to the meeting; that the notice be published on two separate days at least fifteen days prior to the meeting to consider the resolution; and that the notice must contain the date, time, and place of the meeting and substance of the proposed resolution. Additionally, it provides that a copy of the adopted resolution and proof of publication be attached to the act effecting the transaction. Although Clarence Layfield testified to publication of notice of the meeting to dissociate from the parent church, the record is void of any evidence that the provisions of Louisiana Revised Statutes 9:1051 were complied with in the property transfer.
Applying the neutral principles analysis to the facts of this case, we conclude that the presumptive rule of majority control has been overcome in favor of the hierarchical organization of the Cumberland Presbyterian Church by provisions contained in the Confession *722 of Faith as originally codified, and as modified in 1984. Based on an examination of the documents in purely secular terms, we conclude it was the intention of the parties, agreed upon before the dispute arose, to be bound by the provisions of the Confession of Faith, 1984, including those provisions relative to property. We thus find that the trial court erred in recognizing Bethany Independent Church, Inc., as owner of the properties in dispute. In reaching such a conclusion, we must also conclude that the trial court erred in rendering judgment evicting Richard Stewart from the manse.

DECREE
For the reasons assigned, the trial court's judgments are reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the Trinity Presbytery of the Cumberland Presbyterian Church and against Bethany Independent Church, Inc., decreeing Trinity Presbytery of the Cumberland Presbyterian Church as owner of all property formerly belonging to the Bethany Cumberland Presbyterian Church, including specifically the immovable property described in the record and the bank account or accounts in the City Bank and Trust Company of Natchitoches. It is further ordered, adjudged, and decreed that there be judgment herein in favor of the Trinity Presbytery of the Cumberland Presbyterian Church and against Bethany Independent Church, Inc., granting the injunctive relief prayed for. It is further ordered, adjudged, and decreed that there be judgment herein in favor of Richard Stewart and against Bethany Independent Church, Inc., denying the request for eviction of Richard Stewart from the manse. All costs in the trial court as well as the costs of these appeals are assessed against Bethany Independent Church, Inc.
REVERSED AND RENDERED.