ARKANSAS PRESBYTERY of the Cumberland
Presbyterian Church and the Reverend Michael Qualls,
Moderator of the Arkansas Presbytery
*v.* Gary D. HUDSON, Palmetto Cumberland
Presbyterian Church by and Through Its Elders,
Bobby Gene Jones, Carol Norris, Arvil Hudson,
Glen Bond, Sr., Kenneth Norris, Kurt Richter,
as Trustees for the Palmetto Cumberland Presbyterian Church

01-23 40 S.W.3d 301

Supreme Court of Arkansas
Opinion delivered March 29, 2001

*Peel Law Firm, P.A.,* by: *Richard L. Peel* and *John R. Peel,* for appellants.

*McKinnon Law Firm,* by: *Laura J. McKinnon,* for appellees.

RAY THORNTON, Justice. This appeal involves a dispute over the ownership of church property located on Crow Mountain in Pope County following the separation of a local Presbyterian congregation from the hierarchical Cumberland Presbyterian Church. Appellants, Arkansas Presbytery of the Cumberland Presbyterian Church ("Arkansas Cumberland") and the Reverend Michael Qualls, moderator of the Presbytery, appeal an order from the Pope County Chancery Court, granting a petition to quiet title in appellees, Gary Hudson, Palmetto Cumberland Presbyterian Church ("Palmetto"), and the trustees of Palmetto. We affirm the trial court's rulings.

## I. Background

Palmetto was formed in 1949 as a member of the National Cumberland Presbyterian Church ("National Church"), a hierarchical or connectional church, that is governed in Arkansas by

Arkansas Cumberland. The National Church has a written constitution contained in the Confession of Faith.

The property at issue is three separate tracts of land used by Palmetto for its church, parsonage, and graveyard. Tract A is the property on which the Palmetto church sits. On September 21, 1949, M.L. and Cora Dixon conveyed title to Tract A by warranty deed to Cumberland Presbyterian Church — Ewing Presbytery, Arkansas, the former title of Arkansas Cumberland. Palmetto paid one-hundred dollars for the real estate, and no money was received from Arkansas Cumberland to assist in the purchase. During the next year, a church was constructed on the property and was financed by the Palmetto congregation without any assistance from Arkansas Cumberland or the National Church. In 1968, the local Palmetto church requested that title to the church property be conveyed to Palmetto, and on July 2, 1968, a deed was executed by Arkansas Cumberland to the elders of the Palmetto church to hold the property in trust for the local Palmetto church. Neither a reservation of title nor an establishment of a trust in favor of Arkansas Cumberland or the National Church is reflected in the deed.

Tract B is a two-acre church cemetery. On October 10, 1968, Mrs. Cora Dixon conveyed title to Tract B to the local elders as trustees for Palmetto. The Palmetto congregation paid for tract B without the assistance of Arkansas Cumberland or the National Church. On February 28, 1977, Palmetto purchased Tract C for $18,000 by a warranty deed for the church parsonage, or manse, in the name of the elders as trustees of Palmetto. The church obtained a mortgage for the purchase price at a local bank, and the local congregation contributed to the payment of the mortgage. Palmetto did not receive any money from the National Church or Arkansas Cumberland for the repayment of the loan.

At the time of the conveyances of Tract A and Tract B, the National Church constitution contained the following language from the Cumberland Presbyterian Digest of 1957, including the supplement of the actions of the 1963 General Assembly:

> 11. A. Church Property Should Be Deeded to the Local Presbytery.
>
> B. We further recommend that the following additional provisions be adopted regarding the legal steps to be taken by presbyteries for the protection, transfer, or sale of church property:

(1) Church property should be deeded to the trustees of the local presbytery for the benefit and use of the local church, which local trustees will be in complete charge so long as the church remains organized.

This language is also found in the Cumberland Presbyterian Digest of 1975, the church law in effect at the time of the 1977 conveyance of Tract C.

In 1979, the Supreme Court determined that civil courts faced with issues of ownership of church property could properly apply "neutral principles of law" in resolving disputes as to the ownership of church property. *Jones v. Wolf*, 443 U.S. 595 (1979). Following the *Jones* case, the National Church adopted in 1984 an amendment to its constitution to replace the constitutional language endorsing the principle of local ownership of church property. According to the testimony of Mr. Gary Hudson, the church clerk, Palmetto had knowledge of this constitutional amendment because a delegate from Palmetto attended the national meeting, and the Palmetto delegate voted "no" to this constitutional amendment.

The rift between Palmetto and Arkansas Cumberland widened in 1992 when Palmetto refused to meet its financial obligations to Arkansas Cumberland, and Palmetto was reprimanded by the statewide church. Mr. Hudson testified that Palmetto contributed monies and submitted annual reports to the Arkansas Cumberland, as required by the church constitution, through 1991. Hudson further testified that Palmetto paid dues to Arkansas Cumberland until 1990 or 1991.

On August 27, 1995, Palmetto submitted a formal, written notice that indicated its intent to withdraw from Arkansas Cumberland. The local, twenty-member congregation unanimously agreed to the withdrawal. Arkansas Cumberland then appointed a commission, pursuant to the church constitution, that recommended the dissolution of Palmetto and a merger with a nearby Mars Hill Cumberland Presbyterian Church for those members who wished to remain affiliated with the National Church. Reverend Wayne Wood, a former moderator of the Arkansas Cumberland, testified, "I have not located a single member [of Palmetto] to be a party with me in this lawsuit to get the property."

The members of Palmetto refused to vacate the property or to surrender the church records as personal property. Arkansas Cumberland filed an action in replevin and for unlawful detainer, which

was transferred to chancery court and consolidated with Palmetto's action to quiet title. The trial court granted Palmetto's petition to quiet title on July 8, 1999. From these orders, appellants bring this appeal. The controversy requires that we articulate neutral principles of law for review of the questions presented.

## II. Standard of review

Our standard of review in chancery cases is *de novo*. This court has been precise in stating what *de novo* review entails:

> Equity cases are tried *de novo* on appeal upon the record made in the chancery court, and the rule that this court disposes of them and resolves the issues on that record is well established; the fact that the chancellor based his decision upon an erroneous conclusion does not preclude this court's reviewing the entire case *de novo*. An appeal in a chancery case opens the whole case for review. All of the issues raised in the court below are before the appellate court for decision and trial *de novo* on appeal in equity cases involves determination of fact questions as well as legal issues. The appellate court reviews both law and fact and, acting as judges of both law and fact as if no decision had been made in the trial court, sifts the evidence to determine what the finding of the chancellor should have been and renders a decree upon the record made in the trial court. The appellate court may always enter such judgment as the chancery court should have entered upon the undisputed facts in the record.

*Ferguson v. Green*, 266 Ark. 556, 587 S.W.2d 18 (1979) (citations omitted). We do not reverse a finding of fact of the chancery court unless we conclude that the chancery court has clearly erred. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999); *Saforo & Assoc., Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999). We have said, in addition, that a finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Bendinger v. Marshalltown Trowell Co., supra.*

## III. Neutral-principles approach

We first address whether Arkansas should adopt the "neutral principles of law" approach under *Jones v. Wolf*, 443 U.S. 595

(1979), and more specifically, whether the trial court failed to consider the 1984 amendment to the National Church constitution, and erred in ruling that the title to the church property remained in the local Palmetto congregation.

*Jones, supra,* involved a dispute over the ownership of church property following a schism in a local church affiliated with the hierarchical church organization. The "question for decision," said the Court, was "whether civil courts, consistent with the First and Fourteenth Amendments to the Constitution, may resolve the dispute on the basis of 'neutral principles of law,' or whether they must defer to the resolution of an authoritative tribunal of the hierarchical church." *Id.*

 The Supreme Court then determined that, when determining the resolution of issues outside the realm of "religious doctrine of polity," the "neutral principles of law" approach should prevail. *Id.* This approach involves an examination of the following: (1) the language of the deeds; (2) the terms of the local church charters; (3) the state statutes governing the holding of church property, and (4) the provisions in the constitution of the general church concerning the ownership and control of church property. *Id.*

The Court explained the rationale behind this neutral-principles approach:

> [I]t is completely secular in operation, and yet flexible enough to accommodate all forms of religious organization and polity. The method relies exclusively on objective, well-established concepts of trust and property law . . . . It thereby promises to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice.

*Id.* The Court then said that "at least in general outline," the "neutral principles of law" approach is consistent with the foregoing principles. *Id.* The neutral-principles approach was approved in *Maryland & Va. Churches v. Sharpsburg Church*, 396 U.S. 367 (1970), where a state court settled a local church property dispute on the basis of the language of the deeds, the terms of the local church charters, the state statutes governing the holding of church property, and the provisions in the constitution of the general church concerning the ownership and control of church property. That approach entailed "no inquiry into religious doctrine." *Id.* Other jurisdictions have adopted the neutral-principles approach. *See*

*Church of God in Christ, Inc. v. Graham,* 54 F.3d 522 (8th Cir. 1995); *Presbytery of Elijah Parish Lovejoy v. Jaeggi,* 682 S.W.2d 465 (Mo. 1985).

■ We now expressly adopt the neutral-principles approach outlined by the United States Supreme Court in *Jones, supra,* as the appropriate means of resolving church property disputes. In Arkansas, we recognized the neutral-principles approach in *Gipson v. Brown,* 288 Ark. 422, 706 S.W.2d 369 (1986), when we stated: "[S]tate courts can only become involved in church disputes when 'neutral principles' of law can be applied to resolve the dispute." *Id.* We also acknowledged this approach in *West v. Belin,* 314 Ark. 40, 858 S.W.2d 97 (1993). However, we did not specifically outline the neutral-principles approach in either *Gipson, supra,* or *West, supra.* Because we have recognized this approach in prior case law, and because it has been approved by our United States Supreme Court, we expressly adopt the neutral-principles standard in order to reach the merits of this appeal.

## IV. Church property dispute

In our application of the neutral-principles approach, we must refrain from resolving the dispute on the basis of "religious doctrine and practice" and must rely "exclusively on objective, well-established concepts of trust and property law. . . [.]" *Jones, supra.* Any documents, such as the church constitution, pertinent to the dispute, must be scrutinized in purely secular terms. If these documents "incorporate[] religious concepts in the provisions relating to the ownership of property" and if the interpretation of those instruments requires the resolution of a religious matter, then we "must defer to the resolution of the doctrinal issues by the authoritative ecclesiastical body." *Id.*

■ When we are called upon to construe deeds and other writings, we are concerned primarily with ascertaining the intention of the parties, and such writings will be examined from their four corners for the purpose of ascertaining that intent from the language employed. *Webber v. Webber,* 331 Ark. 395, 962 S.W.2d 345 (1998). In reviewing instruments, our first duty is to give effect to every word, sentence, and provision of a deed where possible to do so. *Id.* We will not resort to rules of construction when a deed is clear and contains no ambiguities, but only when its language is ambiguous, uncertain, or doubtful. *Bennett v. Henderson,* 281 Ark.

222, 663 S.W.2d 180 (1984); *Barnes v. Barnes*, 275 Ark. 117, 627 S.W.2d 552 (1982).

The first element of the neutral-principles approach is to review the language of the deeds. Here, the language of the deeds indicates that the local trustees of the Palmetto church hold title to the property. As previously outlined, on September 21, 1949, M.L. and Cora Dixon conveyed title to Tract A by warranty deed to Cumberland Presbyterian Church — Ewing Presbytery, the former Arkansas Cumberland, and on July 2, 1968, Arkansas Cumberland deeded it back to the trustees of Palmetto. The deed for Tract A contains the following language:

> THAT WE, Clyde Kinslow, Carleton Bowden, Ray McSpadden, as Trustees for Cumberland Presbyterian Church Ewing-Barrow Presbytery (formerly Ewing Presbytery), GRANTORS, for and in consideration of the sum of one and No/100 dollars ($1.00) in hand paid by Bobby Gene Jones, Carrol Norris, Arvil Hudson, Glen Bond, Sr., Kenneth Norris, Kurt Richter as Trustees for the Palmetto Cumberland Presbyterian Church, GRANTEES, the receipt of which is hereby acknowledged, hereby grant, bargain, sell and convey unto the said GRANTEES, and unto their successors and assigns forever, the following land lying in Pope County, Arkansas, . . . [.]

> To have and to hold the same unto the said GRANTEES, and unto their successors and assigns forever, with all appurtenances thereunto belonging.

> And we hereby covenant with said GRANTEES that we will forever warrant and defend the title to the said lands against all claims whatever.

The trial court heard testimony from Carleton Bowden, one of the Arkansas Cumberland trustees who was named in the 1968 Cumberland conveyance, and ruled that "[t]he testimony of Carlton Bowden was compelling in that he stated that the intent of the parent church in deeding the one acre to Palmetto was to give full title with no encumbrances." Mr. Bowden testified:

> What happened in 1968 was that the Palmetto congregation requested they be given a deed by the Presbytery to the church property, the Presbytery considered the request, granted it, instructed the Trustees of Ewing-Burrow Presbytery to give a deed to the Palmetto Church. . . . In my opinion, the Trustees had been

deeded to the congregation. . . . My opinion as to why the Cumberland Presbyterian Church is trying to back out of the 1968 Warranty Deed or why they want their property back is two fold. I think the Presbytery desires to retain the property and are reluctant to allow a precedent to be set which might cause other small churches to take similar action[.]

The warranty deed concerning Tract B contains similar language. The deed for Tract B conveys title from Cora Dixon to Bobby Gene Jones, Carrol Norris, Arvil Hudson, Glen Bond, Sr., Kenneth Norris, and Kurt Richter as trustees for Palmetto as grantees, "[t]o have and to hold the same unto the same GRANTEES, and unto their successors and assigns forever, with all appurtenances thereunto belonging." Later, on February 28, 1977, W.M. and Bernetta Kinslow conveyed title for Tract C to the same individuals, who were listed as grantees. The language of the deed for Tract C is identical to the Tract B deed.

■ In our review of the language of the deeds, we note that nothing in the language of the deeds reflects that the Palmetto property was held in trust for the Arkansas Cumberland or the National Church. The language of the deeds vests title and control over the property to the named Palmetto trustees. Moreover, Arkansas Cumberland and the National Church did not contribute to the acquisition of the property, and the local Palmetto congregation exercised complete control over the property.

■ With regard to the second and third elements of the neutral-principles approach approved by the Supreme Court, we note that there is not a local church charter in the record before us, and neither party claims that any state statute creates a trust in the property.

■ We next consider the National Church constitution in effect at the time of the conveyances. The sections of the church constitutions do not contain any language expressly creating a trust in church property in favor of the National Church. The Cumberland Presbyterian Digest of 1957 states:

11. Title to Church Property

\* \* \*

As a rule, the local church is an unincorporated association, so that it cannot hold title to property in its own name. Consequently,

it is necessary that title to property of an unincorporated church be taken in the name of Trustees. . . . The local church may have the deed to its property made to its Ruling Elders and their successors in office as Trustees for the use and benefit of the local church. Or the local church may, if it prefers, elect Trustees for the purpose of taking title to church property.

\* \* \*

Since the opinion of the United States Supreme Court in the case of *Watson vs. Jones*, 13 Wallace 679, decided April 15, 1872, it has been generally held by the Courts of the several states that any property conveyed for the use and benefit of a local church of a given faith is held in trust for the congregation or the denomination adhering to that faith, so that in the event of a split in a local congregation a minority adhering to the original faith may hold the property against the majority.

In case the local congregation dissolves or ceases to exist the property still belongs beneficially in trust to the people of the faith for which the conveyance was originally made. In such a situation there may be no Trustee in existence to preserve or protect the property. Under these circumstances it has been the impression in our denomination that the title in some way is transferred to the Presbytery in which the property is situated. *As a matter of civil law this is not strictly true. While the duty and responsibility of looking after the property may properly devolve upon the Presbytery, the title does not and cannot automatically vest in the Presbytery. The Presbytery may take the legal steps for the protection, transfer or sale of the property as the best interest of the denomination indicates.*

(Emphasis added.)

The supplement to the 1957 digest, which includes the actions of the 1963 General Assembly, contains the following provisions:

11. A. Church Property Should Be Deeded to the Local Presbytery.

B. We further recommend that the following additional provisions be adopted regarding the legal steps to be taken by presbyteries for the protection, transfer, or sale of church property:

(1) Church property should be deeded to the trustees of the local presbytery for the benefit and use of the local church, which local trustees will be in complete charge so long as the church remains organized.

(2) In case the local church should become disorganized through the death or removal of the officers, the presbytery should appoint some of the remaining local members of the congregation a Board of Trustees for the preservation, protections, transfer or sale of the property.

This language is also found in the 1975 edition of the Cumberland Presbyterian Digest, the governing church law at the time of the February 28, 1977, conveyance of Tract C from the Kinslow family to the Palmetto trustees.

Appellants argue that the church constitution, amended in 1984, thereafter imposes a trust in favor of the National Church upon property previously held by the local congregations. That amendment provides:

3.32 The Cumberland Presbyterian Church is a connectional church and all lower judicatories of the church to-wit: synod, presbytery, and the particular churches are parts of that body and therefore all property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Cumberland Presbyterian Church, whether legal title is lodged in a corporation, a trustee, or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or of a more inclusive judicatory or retained for the production of income, and whether or not the deed to the property so states, is held in trust nevertheless for the use and benefit of the Cumberland Presbyterian Church.

Appellants' argument is misplaced. Appellants contend that by adoption of the 1984 amendment to the National Church constitution, a trust in favor of the National Church was imposed upon property belonging to the trustees of the Palmetto church. We again note that Tract A was conveyed in 1968 by Arkansas Cumberland to the local Palmetto church without any reservation of title or creation of a trust in favor of Arkansas Cumberland or the National Church. Appellants do not cite any cases that allow a grantor to impose a trust upon property previously conveyed without the retention of a trust.

■ Although the neutral-principles approach to the resolution of property disputes includes consideration of any church constitutions under *Jones, supra*, it is appropriate to first consider the provision the church constitution in place at the time of the 1968 and 1977 conveyances. We have long held that parties to a conveyance have a right to rely upon the law as it was at that time. *See Sides v. Beene*, 327 Ark. 401, 938 S.W.2d 840 (1997); *Abrego v. United Peoples Fed. Sav. & Loan*, 281 Ark. 308, 664 S.W.2d 858 (1984); *Warren v. Warren*, 273 Ark. 528, 623 S.W.2d 813 (1981).

■ Under the National Church constitutions at the time of the 1968 and 1977 conveyances, the church property "should be deeded to the trustees of the local presbytery for the benefit and use of the local church, which local trustees will be in complete charge so long as the church remains organized." Both the 1963 and 1975 editions of the National Church constitutions, which govern the conveyances of the 1968 and 1977 conveyances, respectively, support the conclusion that exclusive title and control over local church property is vested in the Palmetto trustees. Based upon the application of our neutral-principles approach and our de novo review, we hold that the trial court did not err in quieting title to the property in the trustees of the Palmetto church.

Affirmed.

BROWN, IMBER, and HANNAH, JJ., dissent.

ANNABELLE CLINTON IMBER, Justice, dissenting. The majority's opinion in this case fails to give effect to the Constitution of the Cumberland Presbyterian Church, as amended in 1984, which expressly provides that all property held by local churches is held in trust for the Cumberland Presbyterian Church:

> 3.32 The Cumberland Presbyterian Church is a connectional church and all lower judicatories of the church to wit: synod, presbytery, and the particular churches are parts of that body and therefore all property held by or for a particular church, a presbytery, a synod, the General Assembly, or the Cumberland Presbyterian Church, whether legal title is lodged in a corporation, a trustee or trustees, or an unincorporated association, and whether the property is used in programs of the particular church or of a more inclusive judicatory or retained for the production of income, and whether or not the deed to the property so states, is held in

trust nevertheless for the use and benefit of the Cumberland Presbyterian Church.[1]

In *Jones v. Wolf,* 443 U.S. 595 (1979), the United States Supreme Court sanctioned the use of such an express trust provision in a hierarchical or connectional church's constitution to resolve church property disputes, if the trust provision becomes effective before the dispute arises:

> Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. *At any time before the dispute erupts,* the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, *the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such*

---

[1] The following sections in the Cumberland Presbyterian Church's Constitution, as amended in 1984, also pertain to property:

3.30 Of Property

This section is declaratory of principles to which the Cumberland Presbyterian Church/Second Cumberland Presbyterian Church and their antecedent church bodies have adhered from the inception of the presbyterian form of church government.

\* \* \*

3.31 The provisions of church government as set forth in the Constitution, Rules of Discipline, and Rules of Order prescribing the manner in which decisions are made, reviewed, and corrected within this church are applicable to all matters pertaining to property.

\* \* \*

3.33 Whenever property of, or held for, a particular church of the Cumberland Presbyterian Church, ceases to be used by the church, as a particular church of the Cumberland Presbyterian Church in accordance with this Constitution, such property shall be held, used, applied, transferred, or sold as provided by the presbytery in which that particular church is located.

3.34 Whenever a particular church is formally dissolved by the presbytery, or has become extinct by reason of dispersal of its members, the abandonment of its work, or other cause, such property as it may have shall be held, used, and applied for such uses, purposes, and trusts as the presbytery in which said particular church is located may direct, limit, and appoint, or such property may be sold or disposed of as the presbytery may direct, in conformity with the Constitution of the Cumberland Presbyterian Church.

3.35 A particular church shall not sell, nor lease its real property used for purposes of worship, nurture or ministry, without the written permission of the presbytery in which the particular church is located, transmitted through the session of the particular church.

*steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.*

*Jones v. Wolf,* 443 U.S. at 606 (emphasis added.)[2] The chancellor in this case was *bound* to give effect to the Constitution of the Cumberland Presbyterian Church, as amended in 1984, because it was in effect for several years before the dispute between the parties arose.

Such a holding is also supported by decisions from other jurisdictions. In *Bethany Independent Church v. Stewart,* 645 So.2d 715 (La. Ct. App. 1994), a local affiliate of the Cumberland Presbyterian Church sought to disassociate itself from the general church. In doing so, the local congregation formed a corporation called the Bethany Independent Church and transferred all of the local church's assets to the new corporation, including three tracts of real estate. The general church intervened in the dispute and the trial court resolved the issue in favor of the local church. The Louisiana Court of Appeals reversed and relied solely on the 1984 amendments to the church constitution regarding ownership of church property; that is, the very same provisions at issue here. The court specifically noted that the local church had subjected itself to the rules, governmental structure, and doctrine of the general church prior to the dispute, which arose in 1992. *Id.* at 720. The court held: "Based on an examination of the documents in purely secular terms, we conclude it was the intention of the parties, *agreed upon before the dispute arose,* to be bound by the provisions of the [church's constitution, as amended in 1984], including those provisions relative to property." *Id.* at 722 (emphasis added). Like the situation currently before this court, the deeds to the property in *Bethany Independent Church v. Stewart* were executed in 1872, 1955, and 1960, long before the 1984 amendments to the church constitution. *Id.* However, the court clearly looked to the constitution in effect when the dispute between the parties arose, instead of the provisions in effect at the time the deeds were executed. *Id. See also, Shirley v. Christian Episcopal Methodist Church,* 748 So. 2d 672 (Miss. 2000) (looking to the hierarchical church's 1994 Book of Discipline to resolve a dispute regarding property deeded to the trustees of the local church in 1947); *Cumberland Presbytery of the Synod of the Mid-West of the Cumberland Presbyterian Church v. Branstetter,* 824 S.W.2d

---

[2] The church property dispute in *Jones v. Wolf, supra,* involved a local church affiliated with a similar hierarchical or connectional church organization, the Presbyterian Church of the United States.

417 (Ky. 1992) (the terms of the Constitution of the Cumberland Presbyterian Church, as amended in 1984, governed at the time the property dispute arose in 1987, even though title to the property was held by a local church that had been in existence since 1911); *Fonken v. Community Church of Kamrar*, 339 N.W.2d 810 (Iowa 1983) (looking to church documents in effect at the time the schism within the local church occurred in 1980 even though the property was originally acquired in 1881); *Presbytery of Elijah Parish Lovejoy v. Jaeggi*, 682 S.W.2d 465 (Mo. 1984) (looking to the constitution of the general church as it existed on the date the local church terminated its association with the general church); and *Carnes v. Smith*, 222 S.E.2d 322 (Ga. 1976) (the express trust provisions of the United Methodist Church's Book of Discipline, which provides that the church property is held by local trustees for the benefit of the general church, governed in a dispute where property was deeded in 1852 to the "trustees of the Methodist Episcopal Church [UMC's predecessor] at Mount Pleasant Academy.").

Some jurisdictions have established a rule applicable in situations such as this, whereby a trust provision in a general church's constitution is given effect even though the trust provision was not in place at the time the disputed property was acquired, "so long as a court finds that the trust provisions were declaratory of existing church policy." *Trustees of the Diocese of Albany v. Trinity Episcopal Church of Gloversville*, 250 A.D.2d 282, 288 (N.Y. App. Div.1999) (citing *Rector, Wardens & Vestrymen of Trinity-St. Michael's Parish, Inc. v. Episcopal Church in Diocese of Connecticut*, 620 A.2d 1280, 1292–1293 (Conn. 1993)). Here, the trust provision added to the Cumberland Presbyterian Church's Constitution in 1984 was clearly declaratory of existing church policy. The New Cumberland Presbyterian Digest of 1920 stated, in relevant part:

> Resolved, that it is the sense of this Assembly that the rightful ownership of and title to church property belonging to a disorganized congregation, or of abandoned church property is and should be in the Presbytery in whose bounds it is located, provided there are no provisions in the deed of conveyance directing what shall become of the property when it ceases to be used for church purposes.

The Cumberland Presbyterian Digests of 1957 and 1975 provided, in relevant part:

> In case the local congregation dissolves or ceases to exist, the property still belongs beneficially in trust to the people of the faith

> [the Cumberland Presbyterian Church] for which the conveyance was originally made. ... Under these circumstances it has been the impression in our denomination that the title in some way is transferred to the Presbytery in which the property is situated.

Therefore, at all times prior to the 1984 amendments, church policy stated that the property of a disorganized or dissolved local congregation came under control of the Presbytery or general church. The 1984 amendments did nothing more than solidify existing church policy. Accordingly, the trust provision added to the church constitution in 1984 should be given full effect in favor of the Cumberland Presbyterian Church.

Furthermore, the language providing for a trust in favor of the general church was added to the constitution in 1984 by a three-fourths vote of all the member churches. Palmetto Cumberland Presbyterian Church (Palmetto) was a member of the general church and the Arkansas Presbytery at that time and did not formally withdraw its membership until 1995, eleven years later. Notwithstanding the fact that Palmetto voted against the 1984 amendment, it continued to contribute money and submit annual reports to the Arkansas Presbytery until at least 1991. Palmetto also continued to send delegates to meetings of the Arkansas Presbytery after 1984. While Palmetto may not have agreed with the 1984 amendment to the constitution, it continued to operate as a member of the general church for several years after the amendment was adopted. Thus, Palmetto acquiesced in the constitutional amendment and should be bound by it. The reasoning of the Indiana Court of Appeals in *United Methodist Church v. St. Louis Crossing Independent Methodist Church*, 276 N.E.2d 916 (1971), where it considered a similar church property dispute, is particularly apt in this case:

> A local church, if it desires to remain independent of the influence of a parent church body, must maintain this independence in the important aspects of its operation— e.g., polity, name, finances. It cannot, as here, enter a binding relationship with a parent church which has provisions of implied trust in its constitution, by-laws, rules, and other documents pertaining to the control of property, yet deny the existence of such relationship. ... A local church cannot prosper by the benefits afforded by the parent, participate in the functioning of that body, yet successfully disclaim affiliation when the parent acts to the apparent disadvantage of the local, so as to shield from equitable or contractual obligation the valuable

property acquired by the local church either before or during such affiliation.

The situation presented here, where the local church continued to operate as a member of the general church for several years after the amendment containing the trust provision was adopted, is readily distinguishable from cases in other jurisdictions in which recent amendments to the general church's constitution were deemed inapplicable. In those cases, the local church withdrew from the general church *before* the amendment to the general church's constitution was adopted. *See Presbytery of Beaver-Butler of the United Presbyterian Church in the United States of America v. Middlesex Presbyterian Church*, 489 A.2d 1317 (Pa. 1985) (where the general church's constitution was amended to provide for an express trust in favor of the general church only after the local church voted to disaffiliate); *York v. First Presbyterian Church of Anna*, 474 N.E.2d 716 (Ill. App. Ct. 1984) (where the local church withdrew from the general church before adoption of an amendment to the general church's constitution providing for an express trust in favor of the general church); *Foss v. Dykstra*, 342 N.W.2d 220 (S.D. 1983) (where the general church's Book of Order did not contain a trust provision on the date that the local church voted to withdraw from the general church).

Finally, the deeds granting all three parcels of property to the trustees of the local church name the grantees "as Trustees for the Palmetto Cumberland Presbyterian Church." The Palmetto Cumberland Presbyterian Church, however, no longer exists.[3] Therefore, it is impossible for the deeds to control because the local church for which the property is supposedly held in trust has been dissolved. Under these circumstances, section 3.34 of the church's constitution provides that the property "shall be held, used, and applied for such uses, purposes, and trusts as the presbytery ... may direct[.]"

For all these reasons, I must conclude that the church property in dispute is held in trust for the use and benefit of the Cumberland Presbyterian Church pursuant to section 3.32 of the church constitution. The trial court erred when it failed to give effect to the

---

[3] In 1995, the Arkansas Presbytery of the Cumberland Presbyterian Church suspended the session of the Palmetto Cumberland Presbyterian Church and appointed a commission to rule the church. In 1997, the Arkansas Presbytery adopted the commission's recommendation that the Palmetto Cumberland Presbyterian Church be dissolved and that its members be attached to another congregation.

unambiguous language of the Constitution of the Cumberland Presbyterian Church, as amended in 1984.

BROWN and HANNAH, JJ., join in this dissent.